### PERE MARQUETTE RAILWAY CO. v. MUSKEGON TOWNSHIP BOARD.

1. TOWNSHIPS—ZONING ORDINANCE—INDUSTRIAL PROPERTY.

Triangular piece of property, situated in portion of township between two cities, owned by railroad company and adjacent to easterly side of its right-of-way, in the midst of a district largely devoted to slaughter houses, factories, coal yards, trucking companies, lumber yards, automobile parts yard, with one nearby area devoted to 24 two-family houses and another area across the railroad used for single family residences, *held,* solely adapted to industrial purposes and not suited for individual homes, a use limited by township zoning ordinance, where children could enjoy good air and immunity from street and railroad hazards; hence, as applied to particular parcel, ordinance must be set aside.

2. Municipal Corporations—Discretion of Zoning Board.
    Courts should not interfere with the judgment of a zoning board
    if there is a reasonable basis for its ruling.

3. Same—Zoning Ordinance—Reasonableness.
    A zoning ordinance must be reasonable and its reasonableness
    becomes the test of its legality.

4. Townships—Zoning Ordinance—Public Welfare.
    In determining validity of township zoning ordinance as ap-
    plied to particular parcel of property, the court must con-
    sider whether the zoning of such parcel advances the public
    health, safety, and general welfare of the people.

5. Municipal Corporations—Zoning Ordinance—Determination
    of Reasonableness.
    Each zoning case, as a rule, stands by itself and its reasonable-
    ness must be judged by the circumstances in each particular
    case.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted April 11, 1941. (Docket No. 57, Calen-
dar No. 41,558.) Decided June 2, 1941.

Bill by Pere Marquette Railway Company against
Township Board of Muskegon Township, Muskegon
County, to declare a zoning ordinance void in part,
and for incidental relief. Bill dismissed. Plaintiff
appeals. Reversed.

*Arthur W. Penny* (*John C. Shields* and *Edward
H. Goodman,* of counsel), for plaintiff.

*Paulson & Larnard* (*William J. Balgooyen,* of
counsel), for defendant.

Butzel, J.    On December 28, 1938, defendant
township amended its zoning ordinance, previously
adopted June 18, 1937, so as to place a certain tri-
angular parcel of property belonging to plaintiff
railway company in class "A" residence district,

which the ordinance restricts to single family dwellings, churches, schools, libraries and private clubs. Class "B" residence district differs from class "A" by permitting the building of two-family dwellings. Class "E" industrial district is limited in general to certain manufacturing and any use not declared a nuisance. Appellant petitioned the township board to rezone the triangular parcel as industrial "E" instead of class "A" residential, but the board rejected the petition on two different hearings. Plaintiff then filed a bill of complaint in chancery to declare the ordinance null and void insofar as it affects their property, and for further incidental relief. The chancellor dismissed the bill, and plaintiff appeals.

The triangular piece of property in question is in Muskegon township, and adjoins the defendant company's right-of-way, which is 66 feet wide about two-thirds of the length of the parcel and then broadens into 100 feet in width. The parcel is approximately 334 feet in width at the north, or the base of the triangle, where it abuts on a vacated street formerly known as Duncan avenue. East of the parcel is Glade street upon which the property has a frontage of 600 feet. Glade street is 66 feet wide and runs into the city of Muskegon on the north, and the city of Muskegon Heights on the south. However, the street becomes only 33 feet wide where it adjoins the lower third of the easterly side of the parcel. The property was purchased in 1930 by the railway company for a coal company or other industry that might want to locate along the right-of-way. The parcel is described as unimproved waste land, covered with brush and scrub oaks.

To the north about 400 feet from the parcel, along the west side of the right-of-way, is a coal yard

where coal is stored in piles with outside coal sheds. Another 50 feet to the north and on the east side of the right-of-way, there is located a coal yard to which coal is delivered by the railroad company via a special spur track, and to which the plaintiff delivers about 67 cars of coal during the year. The coal is stored by the company for sale at retail. To the northeast of the property, about 100 feet therefrom, there is located the main plant of the Brunswick-Balke-Collender Company, a large manufacturer of billiard, pool and bowling supplies and bar fixtures, regularly employing about 1,200 men. Adjoining the parcel to the north are the premises of a trucking company, which has plans for enlarging its trucking business. Contiguous to this concern is another large trucking company having 6 to 10 trucks regularly standing or stored on its premises at all times. On the east side of Glade street, there is a long lot on which there are 24 two-story frame dwelling houses each consisting of an upper and lower flat, 10 of the houses being immediately opposite plaintiff's parcel. This property, although nearer the industrial enterprises, was first zoned as class "E" industrial property, but later was rezoned as class "B" residential property by amendment to the zoning ordinance on December 28, 1938. The dwelling houses were purchased for $500 each and rehabilitated at the expense of $1,000 apiece. The 24 houses bring in $700 a month, an average of less than $15 a flat. East of the row of houses is a very large lumber storage yard owned by the Brunswick Company. Spur tracks from another railroad run into it. Two hundred feet to the southeast is an automobile parts company which has a large stock of broken-down cars, and 600 feet southeasterly from the property is a packing company where 50 tons of livestock are slaughtered weekly and the dressed meat is stored. About 1,200 feet southeasterly is

another packing company where a large tonnage of livestock is slaughtered and stored each week. We do not take into consideration other large factories to the northeast of the property. West and southwest of the property, however, such lots as are not vacant have been improved with single residences and are properly zoned as class "A" residence district. Duncan avenue to the north, which was vacated, does not contain any grade crossing, nor does Young avenue on the south. There was formerly a street known as Laurel avenue running through the property, but this has been vacated. The traffic on the streets in proximity to the tract is confined to the tenants of the flats and employees of the plants going to and from work, and the incidental trucking. Eight trains pass over the railroad line daily, and switchings occur from six to eight times daily onto spurs leading to the neighboring industries that are served by the railroad. The railroad track forms a barrier and makes the parcel extremely undesirable for single residence purposes. The property is solely adapted, in our judgment, to industrial purposes, and not suited for individual homes where children could enjoy good air and immunity from street and railroad hazards.

Plaintiff produced four real-estate men from the vicinity who testified as to the difference in the value of the property for industrial rather than residential purposes. The averages of their estimates indicate that the land is worth $900 for residential use, whereas it has an industrial value of $4,120. Defendant produced one local real estate man who stated that the property was worth $700 for residence purposes and between $1,500 and $2,000 for industrial use. A township supervisor, testifying for defendant, said the land was worth only $500 for either use.

We cannot see any efficacious reason whatsoever

for having shut off this particular triangular property east of the railroad right-of-way, when the other property for blocks both northeast and southeast of this particular triangle was all zoned for industrial purposes.  We realize that the court should not interfere with the judgment of a zoning board if there is a reasonable basis for its ruling.  However, it is necessary that a zoning ordinance be reasonable and its reasonableness becomes the test of its legality.  *City of North Muskegon* v. *Miller*, 249 Mich. 52. To classify this property for single residential purposes seems to us to work too great a hardship on the plaintiff and serves no useful purpose for the general welfare of the community.  The parcel itself would be well adapted for residential use, being high, dry, level and sandy, with almost every modern convenience already established, were it not for its location.  In the last analysis we must consider whether the zoning of this particular triangle advances the public health, safety and general welfare of the people.  That is the general purpose of a zoning law and uniformity for this purpose is encouraged.  Each zoning case, as a rule, stands by itself and its reasonableness must be judged by the circumstances in each particular case.  *Moreland* v. *Armstrong*, 297 Mich. 32. Frequently, when the quality and general characteristics of neighborhoods are changing or approach a twilight zone, a zoning ordinance will be upheld where it encompasses a general plan even though its enforcement may work a hardship on certain property owners.  That is not the present case.  One of the principal objectors to industrial use of the parcel is the owner of the property upon which the 24 flats stand, which property was in the first instance zoned as industrial property and even now is not as rigidly restricted as the railway parcel.  Some of the occupants of 14 single homes located upon Young avenue, immediately

south of the apex of appellant's property and extending west on Young avenue, also oppose plaintiff's petition. However, Young avenue and Glade street are separated by the railroad tracks and there is no grade crossing at this point. The houses are isolated from the triangular plot by the railroad. All of the property in the block to the west of the railroad and immediately north of the houses on Young avenue will remain class "A" as well as the property on the south and west. The property on the east side of the railroad on Young avenue has always been industrial. Industrial use of the plaintiff's land should not further reduce the property value on Young avenue, located as it has been on the borderline of an industrial area.

While plaintiff's property may have some small value for single residence purposes, we doubt whether anyone would want to build a single residence amid such unpleasant surroundings. With slaughter houses in the immediate vicinity and a railroad in the back yard and one street that narrows down and leads to the various industrial plants nearby, one would long hesitate before building a single home on this land. Although the value would not be entirely destroyed, it would be so impaired that we deem the ordinance, as applied to this particular property, so unreasonable as to appeal to a court of equity to set it aside.

The decree of the lower court is reversed, and a decree should be entered granting the relief prayed for in the bill of complaint consistent with this opinion. The question being a public one, no costs will be allowed.

Sharpe, C. J., and Bushnell, Boyles, Chandler, and North, JJ., concurred with Butzel, J. Wiest, J., concurred in the result. McAllister, J., took no part in this decision.