PALMER *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—NONCONFORMING USES.
   A higher nonconforming use under a zoning ordinance is one not as objectionable as the former one, conforming to the permissible use to a greater degree than a lower nonconforming use.

2. SAME—CONTINUATION OF NONCONFORMING USES—PURPOSE.
   The continuation of a nonconforming use under a zoning ordinance is for the purpose of avoiding the imposition of a hardship upon the owner of the property with a view to the gradual elimination of such nonconforming use.

3. SAME—ZONING ORDINANCES—TEST OF LEGALITY.
   A zoning ordinance must be reasonable, as reasonableness is the test of legality and the reasonableness of a zoning ordinance must be judged by the circumstances involved in each case.

4. SAME—ZONING ORDINANCE—NONCONFORMING USE.
   Zoning ordinance providing that a nonconforming use of premises may be maintained and continued is construed as permitting use of premises and buildings thereon for purposes for which they were designed or intended to be occupied or used as well as that for which it was occupied and maintained at time ordinance became effective (Detroit Zoning Ordinance, § 3.3 [B]).

5. SAME—ZONING ORDINANCE—NONCONFORMING USES—GARAGES.
   Owner of one-story 75' x 90' masonry building designed for use as a garage, occupied as a public garage for first 18 years after construction, thereafter for about six years as a factory engaged in defense work and operating 24 hours a day in the manufacture of metal products during which latter period amendment to zoning ordinance placing the property in a residential zone became effective, and now worth $19,225 and with a life expectancy of 40 years was entitled to permit for alterations not involving structural changes or additions nor prolonging life of the building in order that it might be used

for transferring, sorting and distributing point for merchandise incidental to cartage business and for the storage of delivery equipment and be used daytimes only except as defense work might require otherwise (Detroit Zoning Ordinance, §§ 2.22, 2.23, 3.3).

6. Costs—Public Question—Zoning Ordinance—Nonconforming Uses.

No costs are allowed in suit involving the construction of provisions of zoning ordinance relative to nonconforming uses of property, a public question being involved.

Sharpe, J., dissenting.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted July 13, 1943. (Calendar No. 42,242.) Decided October 11, 1943.

Petition by Louis G. Palmer, trustee for Grace S. Palmer and John C. Palmer, against City of Detroit for writ of mandamus to require the issuance of a building permit. Writ denied. Plaintiff appeals. Reversed and remanded.

*Fildew & De Gree,* for plaintiff.

*Paul E. Krause,* Corporation Counsel, and *Nathaniel H. Goldstick* and *Arthur L. Barkey,* Assistants Corporation Counsel, for defendant.'

Butzel, J. Plaintiff trustee is the owner of property in Detroit, Michigan. In 1918, in accordance with a building permit, a one-story masonry building designed as a garage, with dimensions of 75 by 90 feet, was erected on the property. The building has a cement floor, brick walls, fenestra built windows, steel overhead girders supporting an asphalt and gravel roof. It was used for 18 years as a public garage. From 1936 to February, 1942, it was used for the manufacture of metal products, being occupied by a manufacturing concern whose

equipment stored in the building consisted of presses capable of handling 75-ton jobs, metal planers, shapers, millers, drill presses, turret lathes and grinding equipment. For a period of time immediately prior to February, 1942, the building was occupied continuously with three shifts of labor during each 24 hours. The manufacturing company was engaged in defense work requiring additional space. On December 25, 1940, the zoning ordinance of the city of Detroit became effective. A petition, filed, as was necessary under the zoning ordinance, for permission to increase the size of the building so as to give the tenant additional space for manufacturing, was denied by the department of buildings and safety engineering of the city of Detroit, and also by the zoning appeal board. The manufacturing concern was obliged to move to larger quarters. Shortly thereafter the Detroit common council passed a resolution authorizing the zoning appeal board in the future when manufacturing companies desired to expand in connection with defense work to grant temporary permits to erect additional buildings in zoned districts during the continuance of the present emergency and for six months thereafter, on the condition that after the six-month period the additions be removed. When the building thus became vacant plaintiff rented it to a cartage company, which agreed to limit the use of the premises during the term of the lease to "Transferring, sorting and distributing point for merchandise incidental to cartage business; the storage of delivery equipment and the use of an underground tank on said premises for supplying fuel for said equipment."

Under the stipulation of facts, it was further conceded that the cartage company represented that it would not continue operations during the evening or

night except when it became necessary for defense work, and that it would conduct its business in a quiet and orderly manner. It was further stipulated that the building is useful only for business purposes and that it is impractical and too costly to convert it to residential purposes, and that if the land was used for residential purposes, it first would be necessary to tear down and destroy the present building, which still has a life expectancy of 40 years and a depreciated value of $19,225. It was further shown that the residences in the neighborhood are old and of inexpensive frame construction. There is a three-story public garage building located not far from the building. There is a store building almost immediately across the street and there is a foundry building in the same block about 200 feet south of plaintiff's building.

Plaintiff applied to the department of buildings and safety engineering to change from the former use of the building for manufacturing purposes to that stated in the lease with the cartage company. The application was denied; the board of zoning appeals affirmed the refusal to permit the change. Plaintiff filed a petition in the Wayne circuit court for writ of mandamus and it was denied. Leave to appeal was granted and the case is before us for review.

Under the new zoning ordinance of the city of Detroit, as amended, buildings in this particular district are to be "two and a half story—two family dwellings." The former use of the building would be allowed only in a district where buildings are to be "40 feet in height—light manufacturing." The zoning ordinance provides for a penalty of not to exceed $500 and not more than 90 days' imprisonment for any violation thereof and that the violation each day shall constitute a separate offense. Further provisions of the zoning ordinance are as follows.

The word "use" is defined in section 2.33 as "the purpose for which land or a building is designed, arranged, intended to be occupied or used, and for which it is occupied or maintained." The word "used" is defined in section 2.34 as meaning "arranged, designed or intended to be used." Other pertinent provisions are as follows:

"SEC. 2.   Definitions.   *   *   *

"SEC. 2.22.   Nonconforming structure.

"A structure conflicting with the provisions of this ordinance applicable to the district in which it is situated.

"SEC. 2.23.   Nonconforming use.

"The use of a structure or premises conflicting with the provisions of this ordinance.   *   *   *

"SEC. 3.2.   Scope.

"No building or structure, or part thereof shall hereafter be erected, constructed, reconstructed, or altered and no building, structure, or land, or part thereof shall be used except in conformity with the provisions of this ordinance.

"SEC. 3.3.   Nonconforming building and uses.

"The following regulations shall apply to all nonconforming buildings and structure or part thereof, and uses existing at the effective date of this ordinance:

"(A) Any such nonconforming building or structure may be continued and maintained provided there is no physical change other than necessary maintenance and repair in such building or structure except as permitted in sections 3.5, 3.6 and 3.7.

"(B) Any such nonconforming use may be maintained and continued, provided there is no increase or enlargement of the area, space or volume occupied by or devoted to such nonconforming use.

"(C) · Any part of a building, structure or land occupied by such a nonconforming use which is changed to or replaced by a use conforming to the

provisions of this ordinance shall not thereafter be used or occupied by a nonconforming use.

"(D)   Any part of a building, structure or land occupied by such a nonconforming use, which use is abandoned, shall not again be used or occupied for a nonconforming use. Any part of a building, structure, or land occupied by such a nonconforming use, which use is discontinued for a period of two years or more, shall not again be used or occupied for a nonconforming use."

The question is presented whether, if a substantial business or commercial building located in a district classified by a subsequent zoning ordinance to be used for residence purposes has been used for manufacturing, the use after the passage of the zoning ordinance may be changed to a higher nonconforming one notwithstanding the provisions of section 3.3 of the zoning ordinance? Must the use of such a building situated in a district classified as residential by the zoning ordinance be limited to the identical nonconforming use that it was being put to at the time that the ordinance was passed? May the building be used for almost the same purposes for which it was designed and built, but for a nonconforming use of a higher grade than the one it was used for when the zoning ordinance went into effect? A higher nonconforming use is one not as objectionable as the former one. While it does not conform, it, however, does so in a greater degree than the use to which the property was formerly put when the zoning ordinance was adopted. No structural changes or additions of any kind are being asked for. No alterations of any kind that would prolong the life of the building are sought. The continuation of a nonconforming use under the zoning ordinance is for the purpose of avoiding the imposition of a hardship upon the owner of the property with a view to the gradual elimination of such nonconforming use. *Cole* v.

*City of Battle Creek,* 298 Mich. 98. What would amount to an immediate, not a gradual, elimination of such nonconforming use is insisted upon by defendant even though this would amount to the destruction of the use of property built long before the zoning ordinance went into effect and of the very use that now is being sought. No objection probably would or could be made were plaintiffs able to secure a tenant who would use the premises as a machine shop within the time set forth in the ordinance.

A zoning ordinance must be reasonable, as reasonableness is the test of legality. Each zoning ordinance, as a rule, stands by itself and its reasonableness in each case must be judged by the circumstances thereof. *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich. 31.

Our attention has not been called to any cases, either in this State or any other jurisdictions, exactly similar to the instant one. Both parties cite cases of other jurisdictions but the facts or ordinances differ. Judging the case upon the facts, the zoning ordinance provides that the word "use" means the purpose for which the land or buildings thereon are designed, arranged or intended to be occupied or used as well as that for which it is occupied and maintained. Plaintiff contends that the words "any such nonconforming use" in paragraph (B) of section 3.3, hereinbefore quoted, refer generally to any such use and not to the identical nonconforming use at the time that the ordinance went into effect. The real question is, whether the ordinance is reasonable in not permitting a higher grade nonconforming use and thus preventing total uselessness of plaintiff's property and the destruction of the large investment therein. It is our judgment that if the ordinance is construed so as to prevent such a use under the particular facts of the case, it is not

reasonable, and that when it is sought to change the use of the property to substantially that for which the building is designed, a nonconforming use, but of a higher grade than the manufacture of metal products for 24 hours a day, and when the plaintiff further agrees that the building will not be used after 7 p.m. except under extraordinary circumstances, the refusal to issue the permit is so unreasonable in this particular case as to invoke the aid of the court.

The order of the lower court is reversed and the case remanded to the circuit court for the issuance of mandamus as prayed for unless a permit is granted. Neither party will recover costs, a public question being involved.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, and BUSHNELL, JJ., concurred with BUTZEL, J.

SHARPE, J. (*dissenting*). I am not in accord with the opinion of Mr. Justice BUTZEL. It is to be noted that the constitutionality of the ordinance is not in issue, as this question was neither raised in the petition for a writ of mandamus nor passed upon by the trial court. Nor is there any specific charge made of fraud or bad faith on the part of the board of zoning appeals. The most that can be claimed under the petition filed by plaintiff is that there was an abuse of discretion by the department of building and safety engineering and the board of zoning appeals in refusing to grant plaintiff a permit.

The zoning ordinance in question was enacted by virtue of the authority granted in Act No. 207, Pub. Acts 1921 (1 Comp. Laws 1929, § 2633 *et seq.* [Stat. Ann. § 5.2931 *et seq.*]). Such ordinances are constitutional and municipalities may adopt them as an

exercise of police power. See *Austin* v. *Older,* 283 Mich. 667. The power to zone is not limited to the protection of the *status quo.* A city may plan its future development. See *Austin* v. *Older, supra.*

The cases of *Cole* v. *City of Battle Creek,* 298 Mich. 98, and *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich. 31, have no application to the issue involved in this case. The *Cole Case, supra,* relates to structural changes proposed to be made in a building. We there held that structural changes in a building which would continue a nonconforming use were prohibited by the ordinance. We there said: ''The continuation of a nonconforming use in this zoning ordinance is designed to avoid the imposition of hardship upon the owner of property, but the limitations upon such use contemplate the gradual elimination of the nonconforming use.'' In the *Pere Marquette Case, supra,* the issue involved was whether a triangular piece of ground should be classified as ''industrial'' rather than ''residential.'' In this case the validity of the ordinance was the only issue involved. There was no question of a misapplication of the provisions of the ordinance.

Section 3.3 (D) of the ordinance provides:

''Any part of a building, structure or land occupied by such a nonconforming use, which use is abandoned, shall not again be used or occupied for a nonconforming use. Any part of a building, structure, or land occupied by such a nonconforming use, which use is discontinued for a period of two years or more, shall not again be used or occupied for a nonconforming use.''

I am unable to read in this section any authority that permits a change from one nonconforming use to another or the same of a higher classification. The discretion of granting or refusing permits is

that of the board of zoning appeals and will not be upset by the courts except in cases of fraud or bad faith. See *Beardsley* v. *Evangelical Lutheran Bethlehem Church,* 261 Mich. 458; and *Austin* v. *Older,* 278 Mich. 518.

In *Pere Marquette R. Co.* v. *Muskegon Township Board, supra,* we said:

"We realize that the court should not interfere with the judgment of a zoning board if there is a reasonable basis for its ruling."

In the case at bar, plaintiff seeks the writ of mandamus to compel the board of zoning appeals to grant him a certain permit. He has no clear legal right to such a permit. In such cases the writ of mandamus is not granted.

The judgment of the trial court should be affirmed, with costs.