ANCHOR STEEL & CONVEYOR COMPANY *v.*
CITY OF DEARBORN.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—POLICE POWER.
   Municipal zoning ordinances are constitutional in principle as a valid exercise of police power.

2. SAME—ZONING ORDINANCES MUST BE REASONABLE.
   A municipal zoning ordinance must be reasonable and its reasonableness is the test of its legality.

3. SAME—ZONING ORDINANCES PRESUMED CONSTITUTIONAL.
   Municipal zoning ordinances are presumed to be constitutional.

REFERENCES FOR POINTS IN HEADNOTES
[1]  58 Am Jur, Zoning § 14.
[2]  58 Am Jur, Zoning § 21.
[3, 4]  58 Am Jur, Zoning § 16.
[4]  58 Am Jur, Zoning § 223.
[6]  See, generally, 58 Am Jur, Zoning § 3.
[7]  See, generally, 58 Am Jur, Zoning § 7.
[8]  58 Am Jur, Zoning § 141.
[9]  58 Am Jur, Zoning § 155 *et seq.*

4. SAME—ZONING ORDINANCE—BURDEN OF SHOWING UNCONSTITU-
TIONALITY.

> One assailing the constitutionality of a municipal zoning ordi-
> nance has the burden of showing that it has no real substantial
> relation to public health, morals, safety or general welfare.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CONSTITUTIONALITY
OF MUNICIPAL ZONING ORDINANCE—CONFORMING USES.

> The constitutionality of defendant city's zoning ordinance is not
> discussed, where the differing uses to which plaintiff desired
> to make of its property conformed to the permitted uses in
> the various zones into which it was rezoned after plaintiff
> had purchased the property.

6. MUNICIPAL CORPORATIONS—USE OF PROPERTY—ZONING ORDINANCE.

> An owner has the right to make any desired use of his premises
> not amounting to a nuisance, in the absence of a municipal
> zoning ordinance.

7. SAME—ZONING BOARD OF APPEALS—USES OF PROPERTY.

> A municipal zoning board of appeals may not prohibit a use
> of property that is permissible in the absence of an ordinance
> and equally permissible under the terms of an ordinance.

8. SAME—ZONING—USE AFFECTING OPERATIONS IN ANOTHER ZONE.

> It is unreasonable and arbitrary to deny a property owner the
> use of its property in each zone in which situated to the full
> extent of its capabilities because such use either facilitates
> or hampers the operations in still another zone.

9. SAME — ZONING — STEEL FABRICATOR — STORAGE — DRAFTING
—CONFORMING USES.

> Plaintiff property owner, a steel fabricator, whose property
> was rezoned into 3 different zones had a clear legal right
> to have permits issued for construction of buildings for steel
> storage and drafting, uses which conformed to the uses per-
> mitted in the respective zones, even though such uses facili-
> tated fabrication operations in another zone, which latter
> operations were not permissible in the zone in which new
> construction was sought; hence, mandamus was properly issued.

Appeal from Wayne; FitzGerald (Frank), J.
Submitted April 5, 1955.   (Calendar No. 46,234.)
Decided June 6, 1955.

Petition for mandamus by Anchor Steel & Convey-
or Company, a Michigan corporation, against the

City of Dearborn, its officers and its zoning board of appeals, to compel issuance of building permits. Judgment for plaintiff. Defendants appeal. Affirmed.

*John P. O'Hara, Jr.,* for plaintiff.

*Dale H. Fillmore,* Corporation Counsel, and *Frederick G. Weideman,* Assistant Corporation Counsel, for defendants.

SMITH, J. Defendants, city of Dearborn, *et al.,* have appealed upon leave granted from a judgment of the circuit court of Wayne county granting plaintiff Anchor Steel & Conveyor Company a peremptory writ of mandamus ordering the issuance of building permits and certificates of compliance.

The plaintiff corporation is engaged in the manufacture and installation of conveyor systems for various industries. In 1948 it acquired, by purchase, an existing manufacturing building located in the city of Dearborn on the east side of Kingsley avenue and bounded on the north by Blesser avenue.

Prior to the purchase of the property, the plaintiff corporation requested Dearborn city officials to examine its plant operations in Detroit to determine whether its manufacturing operations would be permitted, under the existing zoning ordinance, in the building it contemplated purchasing. The requested examination was made. Subsequent thereto plaintiff applied for a certificate of occupancy and simultaneously requested a building permit for the erection of a steel storage and a machinery storage building on the premises. On September 3, 1948, defendant city, through its department of public works, issued a certificate of occupancy to plaintiff certifying that the occupancy of the Kingsley avenue building for the manufacture of conveyors was

in conformity with the zoning laws and issued permits for the construction of the storage buildings. It thereafter completed its purchase of the property.

On April 19, 1949, all of the industrial property in the defendant city was rezoned. Under the new ordinance the zoning of plaintiff's property was changed from business C and industrial A to business C, industrial A, and industrial B. Under the present zoning ordinance plaintiff's property was thus divided into 3 classifications: Business C at the corner of Kingsley and Blesser; a 100-foot-wide strip measured south from an alley running parallel with Blesser and a 133-foot strip along the east side of Kinglsey was classified industrial A, and the balance of plaintiff's property comprising a rectangle at the southeasterly corner was designated industrial B. This classification divided the building in which plaintiff conducted its manufacturing operations into approximately 75% industrial A and 25% industrial B.

In February, 1953, plaintiff corporation applied to defendant city for a certificate of compliance and a building permit to construct a storage building north of and adjacent to its present building and to erect a drafting office, which would constitute a second story to an existing building. The permit was denied and on appeal to the defendant city zoning board of appeals was again denied.

. In May, 1953, plaintiff appealed its application for a certificate of compliance and a building permit for the addition of the drafting office alone as a second story on its present building to the zoning board of appeals of defendant city. This also was subsequently denied by the board on June 11, 1953. Plaintiff thereafter, on July 3, 1953, filed a petition for writ of mandamus, upon which an order to show cause issued. A hearing was had and on April 30, 1954, the court ordered the issuance of the writ.

Leave to appeal was granted by this Court on June 18, 1954. Thus the outlines of the controversy.

This Court, in numerous cases, has discussed the test to be applied in determining the validity of a zoning ordinance. A zoning ordinance must be reasonable and its reasonableness becomes the test of its legality. *Moreland* v. *Armstrong,* 297 Mich 32; *Pere Marquette Railway Co.* v. *Muskegon Township Board,* 298 Mich 31; *Pringle* v. *Shevnock,* 309 Mich 179; *Hammond* v. *Bloomfield Hills Building Inspector,* 331 Mich 551; and *Fenner* v. *City of Muskegon,* 331 Mich 732.

In *Hammond* v. *Bloomfield Hills Building Inspector, supra,* the applicable rules of construction were stated thus (p 555):

"The law is well settled that zoning ordinances are constitutional in principle as a valid exercise of the police power. *Austin* v. *Older,* 283 Mich 667; *Village of Euclid* v. *Ambler Realty Co.,* 272 US 365 (47 S Ct 114, 71 L ed 303, 54 ALR 1016). It is also settled law that a zoning ordinance must be reasonable and that its reasonableness becomes the test of its legality. *Moreland* v. *Armstrong,* 297 Mich 32; and *Hitchman* v. *Township of Oakland,* 329 Mich 331.

"Each zoning case must be determined upon its own facts and circumstances. *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433); and *Hitchman* v. *Township of Oakland, supra.* There is nevertheless a presumption in favor of the constitutionality of zoning regulations, and plaintiffs must sustain the burden of showing that such regulations have no real substantial relation to public health, morals, safety, or general welfare. *Fass* v. *City of Highland Park,* 321 Mich 156; *Northwood Properties Co.* v. *Royal Oak City Inspector,* 325 Mich 419; and *Hitchman* v. *Township of Oakland, supra.*"

See, also, *Redford Moving & Storage Company* v. *City of Detroit,* 336 Mich 702; *Janesick* v. *City of*

*Detroit,* 337 Mich. 549; and *Plum Hollow Golf & Country Club* v. *Township of Southfield,* 341 Mich. 84.

Plaintiff's property, as above noted, was divided by the amended ordinance into 3 different zones, business C, industrial A and industrial B. In each of these areas different operations are carried on, as described by the plaintiff's president. There was testimony, and the conclusion is permissible, that the so-called heavy operations are conducted in the area of the property zoned as industrial B and that all of the individual operations within the plant were substantially conforming rather than nonconforming with the requirements of the zone within which each was conducted. It is the contention of the appellants, however, both as to existing operations and as to the proposed additions to the plant, that we must look at the plant as a whole. This, it is clear, is devoted to the accomplishment of steel fabrication, which, under the amended ordinance, was put in an industrial B district. Appellants' theory is made clear in the testimony of the plans examiner of the building department for the city of Dearborn:

"*Q.* Why did your department deny the building permit?

"*A.* Steel fabrication was not a permitted use in an industrial A district.

"*The Court:* How about a drafting room added over another building?

"*A.* It would still be part of a steel fabrication building."

In and of themselves, such operations, it was testified, were permissible within the areas in which such contemplated structures were to be placed.

"*Q.* Mr. McEvilly, would you deny a permit to anybody who wanted to put a separate drafting room

on, say the business C portion of this property, where there was somebody other than Anchor Steel & Conveyor, would they be granted a permit for a drafting room?

"*A.* For a drafting room in a business C district?

"*Q.* Yes.

"*A.* Provided they had the necessary off-street parking.

"*Q.* As such, the drafting room would not be objectionable?

"*A.* Under different circumstances, it wouldn't be.

"*Q.* How about a steel-storage room on business C property?

"*A.* Steel storage is permitted in a business C district.

"*Q.* And, being permitted in a business C area, it would also be permitted in industrial A?

"*A.* Yes."

In the light of these disclosures we need not rule upon the constitutionality of the amended ordinance insofar as it affects the use of plaintiff's property, although we think it proper to note that it would require considerable dexterity to sustain, as a reasonable exercise of the police power, the creation of a buffer strip of a fixed width which plunges directly through an existing plant. *Janesick* v. *City of Detroit, supra.* What we have here is a narrower question. Plaintiff's relatively small piece of property has been split into 3 different zones. We start with the propositions, as expressed in *Teglund* v. *East Lansing Building Inspector,* 316 Mich 185, 189, that in the absence of a zoning ordinance an owner has the right to make any desired use of his premises not amounting to a nuisance, and that a board may not prohibit a use permissible in the absence of an ordinance and equally permissible under the terms of an ordinance. In the situation with which we are confronted, the structures which plaintiff contemplates erecting involve uses permissible in the ab-

sence of an ordinance and admittedly conforming with the ordinance itself. That is to say, in and of themselves the business operations conducted in the storage room and in the drafting room would be in conformity with the present zoning restrictions. They do, however, contribute to the furtherance of an over-all enterprise, some parts of which could not (assuming the validity of the ordinance) be conducted in the zones in question. Are the structures, then, violative of the ordinance? Neither diligence of counsel nor fruits of our own research disclose Michigan authority squarely in point. We turn, then, for whatever guidance may be afforded, to the deliberations of sister jurisdictions. The case of *Prospect Park Borough* v. *McClaskey,* 151 Pa Super 467, 470 (30 A2d 179), is analogous in many respects. The defendant's premises lay in 2 zones, one industrial, the other commercial, a driveway to the industrial zone being located in the commercial zone. The court stated the problem and its holding on the point, dismissing the complaint, in the following terms:

"It is appellant's contention that the use of the driveway to take supplies into the yard of the brick manufactory and to haul bricks out is accessory to the industry of brick making and as such constitutes a violation of the existing ordinance. With this contention we cannot agree. The driveway is used merely for ingress and egress and for no other purposes. No part of the manufacturing process is carried out on the driveway or on any portion thereof located within the appellant borough."

The result and the reasoning commend themselves to us. It is both unreasonable and arbitrary to deny plaintiff the use of its property in each zone to the full extent of its capabilities because such use either facilitates or hampers the operations in still another zone. Moreover, it does not follow that, because the

product of the drafting room is to be used in connection with plaintiff's manufacturing operations, such operations will be likewise performed in the drafting room or that the storage of steel in an adjacent building, to be used for storage only, will constitute fabrication of conveyors. In this instance plaintiff seeks merely to use his property for a use consistent with the restrictions imposed on each of the particular areas of that property by the zoning ordinance. The plaintiff had a clear legal right to have permits issued for such uses. Defendants' action in withholding the granting of said permits was an arbitrary act. We so hold. There is no merit in the balance of contentions made, and we concur with the finding and result reached by the trial court.

Judgment is affirmed, with costs to appellee.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.