**BOCEK BROTHERS, Appellant and Cross–Appellee,**

v.

**ANCHORAGE, A Municipal Corporation, Appellee and Cross–Appellant.**

Nos. S–1740, S–1773.

Supreme Court of Alaska.

Feb. 11, 1988.

Rehearing Granted in Part and Amended April 12, 1988.

Kenneth R. Atkinson, Atkinson, Conway & Gagnon, Anchorage, for appellant and cross-appellee.

Ronald L. Baird, Julie Garfield, Asst. Mun. Attys., Anchorage, for appellee and cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

### I. INTRODUCTION

This case arises from condemnation proceedings initiated by Anchorage against property owned by Bocek Brothers (Bocek), a partnership. The property consists of a single lot, two-thirds of which is zoned for high density residential usage, R–2, and one-third of which is zoned for light industrial usage, I–1.[1] This condition is normal-

---

1. In 1971 the assembly of the former Borough of Anchorage adopted a zoning map establishing use districts for the Spenard area of Anchorage. Bocek Brothers owned a large unsubdivided tract of land lying within the area zoned. The unsubdivided tract was bounded on the north by West 48th Avenue, across which lay residential development. Residential development also lay across the street of the western boundary, Northwood Street. The property to

the south and east of the tract was zoned for industrial use. An elementary school occupied the northwest corner of the otherwise square tract.

The assembly created a buffer zone between the residential and industrial use areas by placing a 200 foot R–2 use area along the northern and western borders of the unsubdivided tract. The 200 foot R–2 area also surrounded the elementary school.

ly referred to as split-zoning. 2 R. Anderson, *American Law of Zoning* 3d § 9.12 (1986). Bocek does not contest the zoning. Rather, at issue is whether the R-2 portion of the lot may be used to provide off-street parking and off-street loading in connection with development on the I-1 portion. The use allowed on the R-2 portion directly affects the compensation to be awarded for the taking of the property.

The trial court ruled that in connection with development of the I-1 portion of the lot, the R-2 portion could be used for off-street loading, but not off-street parking. We hold that neither off-street loading nor off-street parking is allowed on the R-2 portion in connection with I-1 development on the lot. Thus we affirm in part and reverse in part.

## II. DISCUSSION

■■■ This case involves construction of an Anchorage municipal zoning ordinance and thus the question is one of law. The appropriate standard of review is substitution of judgment. *Borkowski v. Snowden,* 665 P.2d 22, 27 (Alaska 1983).

Analysis of both the parking and loading issues begins with construction of AMC 21.40.040,[2] which delineates permitted uses of R-2 zoned land. That section requires developers of R-2 zoned land to provide "adequate off-street parking ... in connection with any permitted use, as specified in Section 21.45.080." AMC 21.40.040(K).

In 1974 Bocek Brothers subdivided their tract, creating the lot which is the subject of this case. The lot occupies the northeast corner of the tract. The area of the lot is approximately 91,-364 square feet or 2.1 acres. The subdivision plat was accepted by the Borough of Anchorage. The land was undeveloped at the time of Anchorage's condemnation.

2. AMC 21.40.040 is entitled *R-2—Residential District Up to Eight Units on 20,000 square foot lot.* The pertinent portions of this section are reproduced *infra* where apposite to the reasoning of the opinion.

Note also that all statutory references are to the Anchorage Municipal Code in effect in April, 1983, the date Anchorage filed its complaint for condemnation.

3. AMC 21.45.080 provides in pertinent part:

Directions for compliance with the requirements of AMC 21.40.040(K) are found in AMC 21.45.080, entitled "Required Parking." It provides that parking requirements may be satisfied by providing facilities on the same lot or on an abutting lot, appropriately zoned. AMC 21.45.080(T)(1).[3] Thus, the requirements of both sections of the code must be satisfied; the developer must provide parking for permitted uses and that parking must either be on the same lot or on an abutting lot appropriately zoned.

Bocek's interpretation of the ordinance is more complex. In essence, Bocek's argument is that only provisions *authorizing* parking can contain restrictions on parking. There can be no restrictions on parking in provisions *requiring* parking, such as AMC 21.40.040(K). Because AMC 21.45.080(T)(1) *authorizes* parking under certain conditions, those conditions are the only ones Bocek needs to meet.

Bocek then argues that AMC 21.45.-080(T)(1) contains two separate methods of meeting the parking requirement. Bocek can provide parking either on the same lot or on an abutting lot zoned for parking use. Bocek argues that under the first clause of AMC 21.45.080(T)(1), it can use any portion of the subject lot for parking, regardless of zoning. This is so because under AMC 21.45.080(T)(1) there is no zoning proviso if parking is on the same lot; the zoning proviso only applies if parking is on an abutting lot.

*Minimum Off-Street Parking Requirements.*
. . . .

T. Standards for required parking. Parking spaces provided in accordance with the requirements of this section shall meet the following standards:

1. Location: All required parking spaces shall be on the same lot as the main building served or on an abutting lot(s), provided that the zoning district in which said lot(s) is (are) located allow(s) for off-street parking as a permitted principal use, or as a conditional use. Such abutting lot(s) shall be under the same ownership as that of the building to be served, or there shall be a parking agreement, approved by the municipality, which provides for parking requirements for the life of the occupancy.

Along the same line, Bocek Brothers argues that the city may only require the R–2 portion of the lot to meet R–2 use restrictions if the city in effect classifies the R–2 portion as an abutting lot. Bocek reasons that only if the second clause of AMC 21.45.080(T)(1) applies can Bocek be required to comply with R–2 zoning restrictions.

Bocek's arguments fail for several reasons. First, even though the use district boundary does not coincide with the lot boundary, the use district boundary should be respected. Other jurisdictions faced with similar cases have respected the zoning boundaries, absent a claim of spot zoning or unnecessary hardship. *See City of Everett v. Capital Motor Transp. Co.*, 330 Mass. 417, 114 N.E.2d 547 (1953); *Anchor Steel & Conveyor Co. v. City of Dearborn*, 342 Mich. 361, 70 N.W.2d 753 (1955) (court respected municipality's division of building into three different utility districts); *City of Rochester v. Barcomb*, 103 N.H. 247, 169 A.2d 281 (1961); *Bow & Arrow Manor, Inc. v. Town of West Orange*, 63 N.J. 335, 307 A.2d 563 (1973); *Consolidated Management, Inc. v. City of Cleveland*, 6 Ohio St.3d 238, 452 N.E.2d 1287 (1983). As the court in *Bow & Arrow Manor* commented: "The owner has no vested right that the entire … tract be contained within a single use district." 307 A.2d at 570. To recognize such a right would unnecessarily complicate the municipality's attempts to segregate incompatible uses when districting large tracts of land.

In addition, Bocek incorrectly construes AMC 21.40.040(K). That section contains a proviso limiting the required parking in R–2 use districts to parking in connection with a permitted use. Thus, parking in R–2 districts is both required and permitted only in connection with a use permitted in R–2 districts. Such an interpretation of AMC 21.40.040(K) eliminates the dichotomy suggested by Bocek that AMC 21.40.040(K) requires but does not permit parking. It also relegates AMC 21.45.080(T)(1) to its proper role as a supplementary requirement providing additional, but not primary, restrictions.[4]

For these reasons, Bocek argues that it should be allowed to provide parking in the R–2 use district in connection with I–1 development. However, we construe the statute to prohibit parking in an R–2 use district unless associated with a permitted R–2 use. AMC 21.40.040(K). Industrial development is not a permitted use in an R–2 district. Thus, Bocek's proposed use fails to satisfy the requirement of AMC 21.40.040(K) and cannot be allowed.

The off-street loading question should be similarly analyzed, starting with R–2 use limitations.[5] Off-street loading is not permitted or required by any section of AMC 21.40.040. However, some uses permitted as "conditional uses" under AMC 21.40.040 are required by the supplementary requirements to have accompanying off-street loading facilities.[6] Therefore, the possibili-

---

**4.** AMC 21.45.080(T)(1) is located in a section of the zoning ordinance entitled, "Supplementary District Regulations."

**5.** Bocek argued that the analysis should begin with AMC 21.45.090(E) which provides:
*Off–Street Loading Requirements.*
. . . .
E. Location of required loading facilities. The off-street loading facilities required for the uses mentioned in this title shall be in all cases on the same lot or parcel of land as the structure they are intended to serve. In no case shall the required off-street loading space be part of the area used to satisfy the off-street parking requirements.
Like Bocek's argument on parking, this argument mistakenly begins with the supplementary requirements.

**6.** AMC 21.40.040(D) provides:

D. Conditional uses:
Subject to the requirements of the conditional use standards and procedures of this title, the following uses may be permitted:
1. commercial greenhouses and tree nurseries;
2. airstrips and heliports, if adequate approach and noise buffer areas are provided;
3. utilities substations;
4. nursing homes, convalescent homes and similar institutional uses;
5. art schools, music schools, dancing schools and the like;
6. churches and synagogues, along with the customary accessory uses including parsonages, day care and meeting rooms;
7. residential planned unit development;
8. natural resource extraction on tracts of not less than five acres;

ty exists that some off-street loading will be located in R–2 use districts. This loading is, however, required only in connection with uses permitted in R–2 districts. Bocek attempts to use land located in an R–2 use district to provide off-street loading for development in an I–1 district. This is impermissible. The use district boundaries should be respected even where they do not coincide with lot boundaries. The court incorrectly determined this issue.

■ Bocek also pleads that it should receive prejudgment interest on the attorney's fees awarded it by the trial court. The precedent on which Bocek relies, *Hertz v. Berzanske*, 704 P.2d 767 (Alaska 1985), is inapposite to this issue. That case held that prejudgment interest was appropriate on an award of compensation for lost future earning capacity. *Id.* at 773 n. 9. Attorney's fees are not compensation for lost future earning capacity. Instead, attorney's fees are awarded in condemnation actions to compensate the landowner for expenses incurred in connection with the condemnation of his property, in which process the landowner, without compensation, would pay an unfairly large portion of the costs of a public project. *See Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1250 (Alaska 1974). Such compensation need only be "necessary to achieve a just and adequate compensation," Alaska R.Civ.P. 72(k), and is at the discretion of the trial court. *See Resource Inv. v. State, Dept. of Transp.*, 687 P.2d 280 (Alaska 1984). Bocek cites no precedent to support its theory, and we are not persuaded to hold that interest is "necessary," or that trial courts need be constrained by prejudgment interest requirements. The discretion of the trial court, and our review of that discre-

tion, should be adequate to protect the landowner's right to "just compensation."

AFFIRMED in part, REVERSED in part, and REMANDED for entry of judgment consistent with this opinion.

---

9. privately owned neighborhood community recreation centers in keeping with the character and requirements of the district, provided the center is oriented to a particular residential subdivision or housing project and that the uses within are delineated as conditions to approval;

10. mobile home parks on sites of at least two acres in the R–2 district only; (mobile home parks are not permitted in R–2A or R–2D districts)

11. quasi-institutional houses;

12. day care (in R–2A and R–2D zones);

13. 24–hour child care facilities (permitted only in R–2 zone).

AMC 21.45.090 requires:

*Off-street loading requirements.*

No building or structure used for any commercial, business, industrial or institutional use shall be erected (nor shall any such existing building or structure be altered so as to increase its gross floor area by 25%) without prior provision for off-street loading space....