*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLUFFS AT GULL LAKE LLC,

Plaintiff-Appellee,

v

TOWNSHIP OF ROSS,

Defendant-Appellant.

UNPUBLISHED
September 19, 2025
9:12 AM

No. 373193
Kalamazoo Circuit Court
LC No. 2024-000075-AA

Before: SWARTZLE, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Defendant Ross Township determined that plaintiff could not construct a pedestrian pathway on a portion of plaintiff's property. The Zoning Board of Appeals (ZBA) affirmed the Township's position, but the trial court reversed the ZBA's decision and ordered that plaintiff be permitted to construct the pedestrian pathway. We affirm.

## I. BACKGROUND

At issue in this case is the Township's determination that plaintiff could not, under the Ross Township Zoning Ordinance, construct a pedestrian pathway across a portion of plaintiff's property. The Ordinance defines various terms, including a definition of the "permissive zoning concept":

> Land uses are allowed in the various zoning districts by express specific designation in this Ordinance. Where a use is not so designated it is prohibited, unless construed by the Zoning Administrator or Zoning Board of Appeals to be sufficiently similar to a use expressly allowed. No land contained within any zoning district within Ross Township shall be used for any purpose other than those uses specifically allowed in the district in which the building or land is located, except as otherwise provided herein. [Ross Township Ordinance, § 3.4.]

Further, the Ordinance defines a "lot" as "a parcel of land (including a 'unit' within a site condominium development) with the frontage required by this Ordinance on a public street, or on a private street as specifically allowed by this Ordinance, and separated from other land by legal

description, deed, or subdivision plot." Ross Township Ordinance, § 2.2. A "use" is "the *principal* purpose for which a lot or the main building thereon is designed, arranged, or intended and for which it is, or may be used, occupied or maintained." Ross Township Ordinance, § 2.2 (emphasis added). A "permitted use" is:

> A use listed as a "permitted use" in Article 4-Article 13 of this Ordinance is recognized as a use of land and buildings which is harmonious with other such uses which may lawfully exist within the same district (or is designated as a permitted use due to a statutory requirement). A permitted use is subject to the various applicable provisions of this Ordinance, but otherwise it is considered to be a lawful use not requiring special or extraordinary controls or conditions. [Ross Township Ordinance, § 3.5.]

An "accessory use[]" is "a use of a building, lot or portion thereof, which is customarily incidental and subordinate to the principal use of the main building or lot." Ross Township Ordinance, § 2.2. See also Ross Township Ordinance, § 18.4.

Section 6 of the Ordinance provides for the R-1 low-density residential districts. Permitted uses in an R-1 district include, in part, single family dwellings and "[a]ccessory uses or buildings, when in accordance with the provisions of Section 18.4." Ross Township Ordinance, § 6.2(E). Section 8 provides for the R-3 high-density residential districts, and its permitted uses include, in part, "[a]ccessory uses or buildings, when in accordance with the provisions of Section 18.4." Ross Township Ordinance, § 8.2(I).

Plaintiff developed an apartment complex located in Ross Township. Plaintiff's property is primarily zoned R-3 high-density residential. There are two small portions, however, that are zoned R-1 low-density residential. These small portions connect the property to D Avenue, a road that runs through the town's commercial district along Gull Lake. The property's vehicular route of ingress and egress is from the R-3 zoned portion of the property onto highway M-89.

Before plaintiff developed the property, the township planning commission discussed plaintiff's site plan for a multifamily development. A planning consultant stated that pedestrian access had been proposed in a portion of the property that abutted a commercial zone, and a project engineer for plaintiff explained that this would involve adjacent township-owned property. One commissioner stated that the "pedestrian connectivity" could "serve to attract the talent workforce demographics." Another commissioner "commented that he support[ed] locating the pedestrian access closer to the C-1 [commercial] area and suggested it could be included in a larger pathway network for the Gull Lake area."

Plaintiff's counsel contacted the Township by, at least, January 2022 about using township property for the pedestrian pathway. At some point, plaintiff instead planned to construct the pathway to D Avenue through the R-1 zoned portion of plaintiff's property. The Township, through an attorney, sent a letter to plaintiff's attorney stating that the Township's position had "never changed" regarding there being no access to D Avenue through plaintiff's property. The Township claimed that plaintiff's understanding of this was "memorialized" in earlier correspondence with Consumers Energy regarding an easement for accessing M-89. The Township concluded that a "multi-family pedestrian trail is not a permitted R-1 use."

The Township included the May 2021 letter in which it had written to Consumers Energy, explaining that plaintiff needed an easement over Consumers Energy property for the property to have access to M-89. Consumers Energy had indicated that its protocol did not provide for it to give easements if a property had another means of access, and part of plaintiff's property bordered D Avenue. The Township explained to Consumers Energy, however, that it was "not possible for the property to use D Avenue for access" because the land along D Avenue was zoned R-1 and, if it served as access to the R-3 zoned property, that "would amount to directing traffic over a less intense zoning district for a higher density use."

Plaintiff claimed an appeal with the ZBA, requesting that the ZBA overrule the Township's position and allow the pathway. The ZBA affirmed the Township's determination. Plaintiff appealed the ZBA's decision to the circuit court and also made claims of inverse condemnation/regulatory taking and due-process violations against the Township. The parties stipulated to stay the proceedings regarding the taking and due-process claims pending the resolution of plaintiff's appeal of the ZBA's decision.

Following briefing on the issue, the circuit court held a hearing. After argument, the trial court reversed the ZBA's decision and ordered the Township to accept plaintiff's permit applications for the pathway. The trial court explained that the Ordinance did not prohibit a sidewalk in the R-1 zoned property. The trial court asserted that "government bodies cannot effectively do a taking and restrict someone's property use that is otherwise allowable." According to the trial court, if the Township's goal was to create a buffer zone, it could have condemned or purchased the strips of R-1 zoned property. The trial court stated, "[I]t would've been much easier simply for the municipality to maintain control of that property or purchase that property instead of simply re-zoning it, trying to then impose some unwritten requirements on a bona fide purchaser."

The trial court concluded "that the principal purpose of [plaintiff's] whole lot" was R-3 high-density residential. Because the pathway would not constitute a principal purpose of plaintiff's lot, it did not constitute a use under the plain language of the Ordinance. The trial court further relied on *Anchor Steel & Conveyer Co v Dearborn*, 342 Mich 361; 70 NW2d 753 (1955), to explain that plaintiff's proposed use of the R-1 zoned property, only for pedestrian ingress and egress, was incidental to the primary purpose of the property. Further, the trial court surmised that residents would still walk across the property to get to D Avenue, whether or not there was a pathway.

The Township now appeals.

## II. ANALYSIS

The Township argues on appeal that the trial court erred by holding that plaintiff was permitted to construct the pedestrian pathway on the R-1 zoned portion of the property. A party aggrieved by a decision of a zoning board of appeals may appeal to the circuit court. MCL 125.3606(1). "The decision of a zoning board of appeals should be affirmed unless it is contrary to law, based on improper procedure, not supported by competent, material, and substantial evidence on the record, or an abuse of discretion." *Janssen v Holland Charter Twp Zoning Bd of Appeals*, 252 Mich App 197, 201; 651 NW2d 464 (2002). See also MCL 125.3606(1). We review

de novo a circuit court's decision in an appeal from a zoning board. *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011). Finally, "[w]e interpret ordinances in the same manner that we interpret statutes." *Brandon Charter Twp v Tippett*, 241 Mich App 417, 422; 616 NW2d 243 (2000). Accordingly, if the language of an ordinance is clear and unambiguous, then we apply the language as written. *Id*.

The Township argues that "this Court should grant deference to the Township's decisions regarding land use". As the Township asserts, MCL 125.3201(1) acknowledges a governmental interest in limiting overcrowding and congestion. In this case, however, the primary issue involves the application of uncontested facts to the Ordinance, a question of law that this Court reviews de novo. See *Brandon Charter Twp*, 241 Mich App at 421 n 1.

The Legislature has granted municipalities the authority to regulate land use through zoning. *Whitman v Galien Twp*, 288 Mich App 672, 679; 808 NW2d 9 (2010). See also MCL 125.3201(1). As plaintiff argues on appeal, if a statute defines a given term, then that definition controls. *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007).

As the Township argues, in *Pittsfield Twp v Malcolm*, 375 Mich 135, 142; 134 NW2d 166 (1965), our Michigan Supreme Court held that, in this type of ordinance, the "absence of the specifically stated use must be regarded as excluding that use." Likewise, under this Ordinance, a "use" is only permissible if identified by the Ordinance. Ross Township Ordinance, § 3.4. See also *Dezman v Charter Twp of Bloomfield*, 513 Mich 898; 997 NW2d 42 (2023). So, according to the Township, because the pedestrian trail is not identified as a permissible use under R-1 zoning, the trail must be an excluded use.

Plaintiff responds that the trail is not a "use" but rather an accessory use to an otherwise proper R-3 use, i.e., the apartment complex. Plaintiff relies on *Anchor Steel*, 342 Mich at 363-364, in which the city rezoned the plaintiff's industrial property. Several years later, the plaintiff applied for building permits to construct a new storage facility and a second story on an existing building to serve as a drafting office. *Id*. at 364. The city denied the request, and the zoning board of appeals denied the plaintiff's appeal. *Id*. Our Supreme Court explained the plaintiff engaged in different operations in the differently zoned portions of its property, and the individual operations were "substantially conforming" with the requirements of each zone. *Id*. at 366. The Court relied on testimony demonstrating that the drafting room and storage facility "[i]n and of themselves" were permissible in the zones in which the plaintiff sought to build them. *Id*. at 366-367. The city opposed the construction, however, because steel fabrication was not a permitted use in the district. *Id*. at 366.

Our Supreme Court explained that, considering the testimony, the Court did not need to "rule upon the constitutionality of the amended ordinance insofar as it affects the use of plaintiff's property." *Id*. at 367. Instead, "in and of themselves the business operations conducted in the storage room and in the drafting room would be in conformity with the present zoning restrictions." *Id*. at 368. The Court acknowledged that the business operations "contribute[d] to the furtherance of an overall enterprise, some parts of which could not (assuming the validity of the ordinance) be conducted in the zones in question." *Id*. The Court determined that it was "both unreasonable and arbitrary to deny [the] plaintiff the use of its property in each zone to the full extent of its capabilities because such use either [facilitates] or hampers the operations in still another zone."

*Id.* Accordingly, in *Anchor Steel*, the drafting room and storage facilities themselves were permissible uses within the zones in which they would be located, only facilitating the work being done in other zones that would not have been permissible in the at-issue zones.

Plaintiff has the better argument. The proposed pathway is serving the high-density residents of the adjoining zone, and a high-density *use* would not be permissible on the R-1 zoned portion. The pathway, however, does not constitute a "use" under this Ordinance because it is not the "principal purpose" of plaintiff's lot. Rather, the pathway amounts to an "incidental and subordinate" activity within the R-3 zoned apartment complex, i.e., it is an "accessory use." See Ross Township Ordinance, §§ 2.2, 3.4, and 3.5.

The Township argues that when a sidewalk is connected to an R-3 zoned property "for the purpose of allowing that high-density residential traffic to move across it," then the sidewalk "becomes part of the high-density use." The Township does not argue, however, that all sidewalks constitute high-density residential use. Plaintiff contends that the Ordinance does not explicitly acknowledge the use of any pedestrian walkways in residential districts. In fact, section 8 of the Ordinance does not list sidewalks under the "Permitted Uses" of R-3 zoned property; but it does require, under "Conditions and Limitations," that multiple-family dwellings include sidewalks "between all off-street parking areas and the multiple family dwellings they serve." Ross Township Ordinance, § 8.5(4). Section 6 does not contain the same requirement for R-1 zoned properties, but the inclusion of sidewalks in section 8 as a condition and requirement in some circumstances, rather than a *use*, demonstrates that the proposed pathway is not a "use" as contemplated by the permissive zoning concept. See Ross Township Ordinance, §§ 2.2 and 3.4.

The Township tries to distinguish *Anchor Steel* on the basis that, here, "the high-density, multi-family pedestrian walking path is *not* permitted in the R-1 district", whereas the plaintiff in *Anchor Steel*, 342 Mich at 369, sought "to use his property for a use consistent with the restrictions imposed on each of the particular areas of that property by the zoning ordinance." Although the Ordinance follows permissive zoning, only permitting uses that are explicitly identified, the pathway does not constitute a "use" for purposes of permissive zoning. Moreover, R-1 zones explicitly allow for accessory uses, Ross Township Ordinance § 6.2(E), and, as already explained, this pathway will be "incidental and subordinate to the principal use of the main building or lot," Ross Township Ordinance, § 2.2.

Finally, the Township argues that there is a presumption that its Ordinance is constitutional and that plaintiff bears the burden of showing that the regulations had no real substantial relation to a proper purpose. Plaintiff does not, however, need to demonstrate that the Ordinance is unconstitutional to be permitted to build the pathway. Instead, plaintiff correctly points out that, under the Ordinance as written, it has the right to build a pedestrian pathway across the R-1 zoned portion of its property. The trial court did not err by reversing the ZBA's determination.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates