## ALDERTON v. CITY OF SAGINAW.

1. Municipal Corporations—Zoning Ordinances—Police Power.
   A municipal zoning ordinance, to be valid, must bear a direct and substantial relation to the objectives of police power, the preservation of the public health, safety, morals, and general welfare of the community as a whole.

2. Same—Zoning Ordinance—Burden of Proving Invalidity.
   The party attacking a municipal zoning ordinance has the burden of establishing affirmatively that the ordinance has no real or substantial relation to public health, morals, safety, or general welfare.

3. Same—Zoning Ordinance—Presumptions.
   A municipal zoning ordinance is presumed valid.

---

References for Points in Headnotes

[1] 58 Am Jur, Zoning § 26.
[2, 3, 5] 58 Am Jur, Zoning § 16.
[4] 58 Am Jur, Zoning § 14.
[6] 58 Am Jur, Zoning §§ 140–142.
[7] 3 Am Jur, Appeal and Error § 896.

4. SAME—DETERMINATION OF VALIDITY OF ZONING ORDINANCE.
   The validity of each municipal zoning ordinance must be determined on its own facts and circumstances.

5. SAME—ZONING ORDINANCE—APPLICATION TO PARTICULAR TRACT.
   More than a debatable question must be presented as to the validity of a municipal zoning ordinance before a court may find invalid action by legislative body which adopted the zoning ordinance and hold the ordinance invalid so far as it applies to particular tract involved.

6. SAME—ZONING ORDINANCE—RESIDENTIAL USE—VALUE.
   Determination as to the validity of a municipal zoning ordinance restricting use of property to residential purposes, requires that consideration be given to the character of the district, its peculiar suitability for particular uses, the conservation of property values and character of building and population development, unsuitability and lack of market for residential purposes and whether it will become "dead land" or nonincome-producing land without residential value.

7. SAME—ZONING ORDINANCE—FINDINGS OF COURT—EVIDENCE.
   The Supreme Court gives weight and careful consideration to the findings of the lower court who heard the testimony, saw the exhibits, and, in most instances, was familiar with the area involved in disputed application of a municipal zoning ordinance.

8. SAME—ZONING ORDINANCE—RESIDENCE USE IN COMMERCIAL AREA —TRAFFIC—VALUE.
   Conclusion of trial court that recently adopted municipal zoning ordinance, restricting use of 3 blocks midway of 27-block portion of only through arterial highway in that part of city to multiple family residential use, accessory uses, and listed waiver uses, such as office and professional buildings, was invalid as applied to such area *held*, proper under record showing the area was commercial not only in the adjacent portions but within the 3-block area itself, no new residences were being constructed, that such residences as were there were 50 years old, or more, that traffic will not be substantially reduced, and value as commercial area is considerably more than as residential.

9. COSTS—PUBLIC QUESTION—ZONING ORDINANCE—RESIDENCES.
   No costs are allowed in suit to declare invalid a municipal zoning ordinance as applied to 3-block area midway on 27-block portion of a through arterial highway in defendant city whereby use was limited to residential purposes, a public question being involved.

Appeal from Saginaw; O'Neill (James E.), J. Submitted April 5, 1962. (Docket No. 23, Calendar No. 48,833.) Decided July 2, 1962.

Bill by Emery R. Alderton and others against the City of Saginaw, a municipal corporation, to enjoin enforcement of zoning ordinance as it applies to their properties. Decree for plaintiffs. Defendant appeals. Affirmed.

*William A. Boos, Jr.* and *Hamed W. Suffety,* for plaintiffs.

*W. Vincent Nash,* City Attorney, and *Jack E. Kerr,* Assistant City Attorney, for defendant.

KELLY, J. This case involves a zoning ordinance as applied to 3 blocks of Genesee avenue, in the city of Saginaw, to-wit: R–3 classification, limiting use to multiple family residential uses, accessory uses, and listed waiver uses, such as office and professional buildings. The circuit judge entered a decree restraining defendant city from enforcing the provisions of the zoning code as it applies to plaintiffs' properties and, further, prohibiting defendant from more highly restricting the use of the properties in question than that property which is classified as B–2 (business classification) elsewhere in the city of Saginaw. Defendant city appeals.

The Saginaw river bisects the city of Saginaw in a generally northerly and southerly direction and divides the city into eastern and western parts. The street in question, East Genesee, is the major street in the eastern part and it is the only through arterial highway running from southeast to northwest.

The present zoning code was adopted in October, 1958. Immediately north of the 3-block area in question the property is classified as either B–2 or

B–3 for a distance of 13 blocks. This allows general shopping and merchandizing on both sides of the through street for these 13 blocks. Immediately south of the 3-block area is a drive-in, and to the south we find a similar situation on both sides of Genesee, namely, for 11 blocks it is zoned B–1, B–2, M–1 or M–2, which permits business and manufacturing use.

At first glance the 3 blocks in question appear to be residential, but within these 3 blocks, on both sides of Genesee, we find the following businesses or offices: Fur sales, repair, and storage; vacuum cleaner sales; insurance office; 3 doctors' offices; real-estate firm; dentist; chiropractor; Temple Beth El; television service; dry cleaner pickup station; and 2 grocery stores.

It is apparent that there has been created a zoning formula for this 3-block area that plaintiffs properly described to this Court as a "3-block oasis."

It is the contention of the city that the trial court erred in decreeing that henceforth both sides of Genesee within this 3-block area, which is now zoned R–3, will not be zoned with a higher restriction than B–2.

The city, endeavoring to prove that the circuit judge was wrong in so determining and attempting to justify this unusual zoning, states that if the trial court's decree would become operative the traffic on Genesee street within this 3-block area would increase due to the fact that there could, and probably would, be various business places constructed within the area.

It is difficult to understand the city's position in this regard when the proofs show that within the last 2 or 3 years the city allowed the lots immediately south of this 3-block area to be used for the construction of a quarter of a million dollar drive-in,

which, it is admitted (and is apparent) has greatly increased the traffic in this area.

The residences presently in the area are old, and no testimony was given as to when the last residence was erected, but apparently it has been some time since there has been new residential construction.

In the "findings of the court" we find the following statement:

"It seems to me that this is an unreasonable restriction on the people who live in this small area because they are being squeezed and being squeezed and being squeezed, and the question this court has to decide is when does that squeezing become unreasonable, and it seems to me that that point has been reached, because of the nature of this locality, you have a traffic problem there which you can't eliminate."

Appellant does not deny that it is a rather late day to apply this zoning restriction to these 3 blocks, but states that this should not prevent the city from holding the line now.

The record discloses that 2 real-estate appraisers testified; that the appraiser called by plaintiffs testified there was no marketable value for plaintiffs' property under the existing code. The other appraiser, called by the city, admitted that under the existing code the use would be limited to waiver uses, such as professional buildings.

Appellees call attention to the fact that most of the plaintiffs are not speculators and are not "Johnnys come lately" as they have, with the exception of plaintiffs Vernon W. Dingman, Jr. and Dorine Dingman, owned their properties for years, and call this Court's attention to the fact that plaintiffs Alderton, who have owned their property for over 10 years, buying it for $10,500, have been endeavoring to sell and the best offer obtained was

$8,500, which was accepted but then rejected before sale was consummated after purchaser, a dentist and his wife, looked over the neighborhood; that another plaintiff had invested $20,000 in remodeling property he had hoped to be able to occupy under the present zoning for multiple family residential use and, while he was able to so rent it in the 2 or 3 years following World War II when property was scarce in Saginaw, since that time he has not been able to obtain enough money to keep it repaired and pay taxes. Plaintiffs Vernon W. Dingman, Jr., and Dorine Dingman purchased their property in 1959, at 1422 East Genesee, intending to open a school of cosmetology, but were turned down by the zoning board for a waiver use.

We have held that a zoning ordinance to be valid must bear a direct and substantial relation to the objectives of police power, the preservation of the public health, safety, morals, and general welfare, of the community as a whole (*Long* v. *City of Highland Park,* 329 Mich 146); that the attacking party has the burden of establishing affirmatively that the ordinance has no real or substantial relation to public health, morals, safety, or general welfare and that the ordinance is presumed valid (*Austin* v. *Older,* 283 Mich 667); that each case must be determined on its own facts and circumstances (*Moreland* v. *Armstrong,* 297 Mich 32), and that in order for the courts to find action of the legislative body invalid, more than a debatable question is required (*Brae Burn, Inc.,* v. *Bloomfield Hills,* 350 Mich 425).

The debatable question rule as presented in *Brae Burn, supra,* does not mean such question exists merely because there is a difference of opinion between the zoning authority and the property owner in regard to the validity of the ordinance. If this were the case, no ordinance could ever be successfully attacked.

In determining validity of an ordinance we give consideration to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development (*Grand Trunk W. R. Co.* v. *City of Detroit,* 326 Mich 387); unsuitability for residential purposes (*Ritenour* v. *Township of Dearborn,* 326 Mich 242); lack of market for such purpose (*Long* v. *City of Highland Park, supra*), and whether the land will become "dead land" or nonincome-producing land without residential value (*Janesick* v. *City of Detroit,* 337 Mich 549).

In zoning appeals we give weight and careful consideration to the findings of the lower court who heard the testimony, saw the exhibits and, in most instances, is familiar with the area in dispute. In the case at bar, the lower court having heard the testimony and viewed the exhibits concluded the ordinance was invalid. This conclusion is amply supported by the following: (1) The character of the area was commercial as indicated by the properties immediately to the north and south and by the numerous commercial type operations in the very area zoned; (2) There was no evidence of any new residential construction and the present residences are 50 years old, or more; (3) The best the property could be moved for, even by the testimony of defendant's own expert witnesses, was for waiver uses which were commercial in nature; (4) Defendant's claim that traffic will be substantially reduced is not supported by the general character of the area, particularly the property along Genesee immediately to the north and south of the zoned area; (5) The value of the property as commercial is considerably more than as residential. While this in itself is not a controlling factor, we will give it consideration (*Janesick* v. *City of Detroit, supra*).

The decree of the lower court is affirmed. No costs, a public question being involved.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.