## REIBEL *v.* CITY OF BIRMINGHAM

1. ZONING — RESTRICTIONS — RATIONALITY — REASONABLENESS — VALIDITY.
   Zoning of the particular property, although rational, which prevents any reasonable use of the property is confiscatory and for that reason invalid.

2. ZONING—RATIONALITY—REASONABLE USE—REVIEW.
   The "debatable question" criterion which limits appellate review in questions relevant to the rationality of zoning does not govern when the factual issue presented is whether the particular property can be reasonably used as zoned.

3. ZONING—UNIMPROVED PROPERTY—REASONABLENESS.
   The fact that property is unimproved does not establish that it cannot reasonably be used as it is currently zoned.

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 7, 8] 58 Am Jur, Zoning § 43 *et seq.*
[5, 6, 11] 58 Am Jur, Zoning § 140.
[9–11] 58 Am Jur, Zoning § 25 *et seq.*

4. ZONING—RATIONALITY—REASONABLE USE—PROPERTY VALUE.

Disparity between the value of property under current zoning and its value under proposed zoning may be relevant in determining whether the present zoning is rational but it is not relevant in determining whether present zoning deprives the property of any reasonable use.

5. ZONING—RESTRICTIONS—PROPERTY VALUE—VALIDITY.

Disparity between the value of property as zoned and its value if it were zoned differently or not at all, does, in a sense, create a confiscation; however, this type of confiscation of a segment of value by a zoning restriction does not automatically entitle the property owner to a declaration that the restriction is invalid.

6. ZONING—WORDS AND PHRASES—CONFISCATION—DEGREES.

"Confiscation" in relation to zoning restrictions may refer to either a partial or total destruction of property value.

7. ZONING—WORDS AND PHRASES—REASONABLE USE—FEASIBILITY—RATIONALITY.

The term "reasonable use" in relation to zoning restrictions may refer either to the feasibility of a particular use or to the rationality of the use.

8. ZONING—RESTRICTIONS—REASONABLE USE—FEASIBILITY.

A zoning restriction deprives the zoned property of any reasonable use and is, therefore, confiscatory if all permitted uses are so devoid of feasibility that the restriction has accomplished the destruction of all usable value.

9. ZONING—RATIONALITY—DETERMINATION.

The interest of the individual property owner is balanced with needs of the community in judging the rationality of zoning and a large disparity in value may be persuasive that existing zoning is irrational; nevertheless, where the issue is rationality of the zoning restriction, the courts have generally deferred to the judgment of governmental authorities to whom the people's representatives have delegated the responsibility of balancing interests of the individual owner and of the community.

10. ZONING—RESTRICTIONS—PERMITTED USES—FEASIBILITY—DETERMINATION.

The issue of whether any of the permitted uses under a zoning restriction are feasible is essentially judicial as the courts do not attempt to balance an individual property owner's in-

terest against the interest of the community but seek instead to determine whether the permitted uses are unfeasible.

11. Zoning — Single-Family Residence — Confiscation — Constitutional Law.

   A lot, upon which a residence can be constructed and which for such use is worth $4,500, is a lot that can feasibly be used as it is zoned and, therefore, its single-family residence zoning is not confiscatory nor unconstitutional.

Appeal from Oakland, William R. Beasley, J. Submitted Division 2 November 13, 1969, at Lansing. Decided May 25, 1970.

Complaint by Arthur R. Reibel against the City of Birmingham, for a determination that defendant's zoning of his property was unreasonable. Judgment for defendant. Plaintiff appeals. Affirmed.

*Reibel, Oliver & Dinan,* for plaintiff.

*Hartman, Beier, Howlett & McConnell,* for defendant.

Before: Levin, P. J., and T. M. Burns and Danhof, JJ.

Levin, P. J. The plaintiff complains that the single-family residence zoning of his property is unreasonable.[1] He appeals a judgment denying his claim.

The plaintiff owns a lot[2] in the City of Birmingham, Michigan. The lot is in a block bounded by Maple (15-Mile) Road on the north, Forest Avenue on the south and Adams Road on the east. The lot

---

[1] Plaintiff applied to the city for a rezoning of the property in 1966 and, when his application was denied, commenced this action.
[2] The lot is 152 feet on Forest and 62 feet on Adams. There is a 25-foot setback requirement from both Adams and Forest.

is located at the southeast corner of the block, *i.e.*, at Forest and Adams.

The northerly and southerly dimension of the block is 800 feet, the westerly and easterly dimension is 400 feet.

The northerly two-thirds of the block is improved with office and other commercial buildings. A portion of that two-thirds of the block—just a short distance north of the plaintiff's lot—is used as a parking area.

The southerly one-third of the block, in which plaintiff's lot is located, is zoned residential, except for the westerly 175 feet which is zoned business. There is a residence on Adams between the plaintiff's lot and the parking area to the north.

Immediately west of plaintiff's lot there are seven single-family residences and two vacant lots on the north side of Forest. There are seven single-family residences and three vacant lots across the street on the south side of Forest. Both sides of Forest east of Adams have been improved with single-family residences.

The area immediately west of the block is zoned business.

Although the plaintiff contends that he should be permitted to erect a small office building on his lot, he does not contend that its zoning for single-family residence use is irrational. He seems to recognize, in light of the existing single-family residences on three sides of his lot, that the present zoning bears, as it is frequently expressed, a substantial relationship to "public health, safety, morals or the general welfare".[3]

---

[3] See *Sisters of Bon Secours Hospital* v. *City of Grosse Pointe* (1967), 8 Mich App 342, 349.

The fact that there has been a business use at the southwest corner of the block, 450 feet west of the plaintiff's lot, since 1936 shows not only, as plaintiff urges, that commercial uses are not in-

Plaintiff claims that the zoning of his property is, nevertheless, unconstitutional because the lot cannot reasonably be used as it is now zoned. It is well established, as plaintiff contends, that zoning of particular property, although rational, which prevents any reasonable use of the property is confiscatory and for that reason invalid.[4]

Whether zoning prevents any reasonable use of particular property is more a question of fact than of judgment. The "debatable question" criterion which limits appellate review when the rationality of zoning is put in issue does not govern when the factual question presented is whether particular property can reasonably be used as zoned.[5]

At trial, the testimony was that property on the north (plaintiff's) side of Forest had been bought and sold at a premium (i.e., for an amount in excess of its value for single-family residence use) because speculators believe that ultimately it will become possible to improve such property for commercial purposes. This speculative element must, of course, be eliminated; the value which speculative buyers and sellers visualize would not be material on the question of whether the plaintiff's lot can be used as it is now zoned. On this the parties appear to be in agreement.

compatible with the continuance of the residential character of the street, but also that the city has succeeded in stemming the tide of commercial development on Forest. Zoning must begin and end somewhere. See *Real Properties, Inc.,* v. *Board of Appeal of Boston* (1946), 319 Mass 180 (65 NE2d 199, 201).

[4] *Ervin Acceptance Company* v. *City of Ann Arbor* (1948), 322 Mich 404, 408; *McGiverin* v. *City of Huntington Woods* (1955), 343 Mich 413, 419; *Bassey* v. *City of Huntington Woods* (1956), 344 Mich 701, 704; *Pere Marquette R. Co.* v. *Muskegon Township Board* (1941), 298 Mich 31, 37; *Grand Trunk W. R. Co.* v. *City of Detroit* (1949), 326 Mich 387, 399; *Frendo* v. *Township of Southfield* (1957), 349 Mich 693, 698; *Nectow* v. *City of Cambridge* (1928), 277 US 183 (48 S Ct 447, 72 L Ed 842).

[5] *Brae Burn, Inc.,* v. *City of Bloomfield Hills* (1957), 350 Mich 425, 434; *Alderton* v. *City of Saginaw* (1962), 367 Mich 28, 33.

One of the plaintiff's expert witnesses testified that after eliminating the speculative element the plaintiff's lot and any residence that might be there constructed would probably be worth less than the cost of construction and, consequently, the lot itself was worthless. A planning consultant testified that the lot is not suitable for single-family residence use.

A city planner testified for the city, however, that the lot could be used as now zoned.[6] Another witness for the city testified that vacant lots in the area had been sold at various prices, some as high as $7,500, and that the plaintiff's lot was worth two-thirds of the value of lots not having the locational disadvantages of adjacency both to the commercial area to the north and heavily trafficked Adams. This testimony was corroborated by one of the plaintiff's expert witnesses who testified that, after eliminating the speculative factor, the lot was still worth $4,500. The trial judge found plaintiff's lot was worth $4,500 for use as a single-family residence.

The plaintiff emphasizes the heavy traffic on Adams and Forest, the proximity of the lot to the commercial area to the north and other factors which he asserts make it undesirable as a residential lot. These unfavorable factors would, of course, affect the market value of the property, but the testimony shows that they were taken into consideration by the witness who testified that the lot as now zoned was worth two-thirds of what lots not so disadvantaged are worth and by the witness who said the lot was worth $4,500.

---

[6] The city planner conceded that it was "conceivable" that in the future the lot would be used commercially. Such a change in circumstances might well require a different result, see Anno: Judgment denying permit for use of premises under zoning regulations as bar to subsequent application, 71 ALR2d 1362.

The fact that the plaintiff's lot is unimproved does not establish that it cannot reasonably be used as it is now zoned; the former owners and the plaintiff may have simply postponed development until, hopefully, it can be improved commercially.

The lot is relatively small; it would not be necessary to install utilities or make other on-site improvements to make it usable.[7] The lot could be sold as is directly to an end user.[8]

If zoned for office use the plaintiff's lot would be worth $45,000. The disparity between the $4,500 value, as presently zoned, and the $45,000 value if zoned for office use would have some relevance if the issue was whether present zoning is rational.[9] It is not relevant where, as here, the issue is whether present zoning deprives the property of any reasonable use.

Zoning restrictions clearly have an affect on value. They may enhance value by barring incompatible uses. They may depress value by precluding an advantageous use.

If a zoning restriction depresses value, then the disparity between the value of the property as zoned and what it would be worth if it were zoned differently or not zoned at all is, in a sense, "confiscated" by the zoning restriction. It is, however, manifest that "confiscation" of a segment of value by a zoning restriction does not automatically entitle an owner to a declaration that the restriction is invalid. Otherwise, only zoning which enhanced the

---

[7] The plaintiff is not faced with the problem which confronted the property owner in *Krause* v. *City of Royal Oak* (1968), 11 Mich App 183.

[8] Since the expert who asserted that the lot was worth $4,500 did not include in his calculations a discount for a builder's profit, we take it that the value stated assumed a sale to an end user.

[9] *Janesick* v. *City of Detroit* (1953), 337 Mich 549, 555; *City of Howell* v. *Kaal* (1954), 341 Mich 585, 589, 590.

value of all property subjected to the restriction would be valid.

Here, as in many sectors of the law, our definitional difficulty is attributable to the elasticity of the terms we are seeking to define. The word "confiscation" can refer to partial as well as total destructions of value. The term "reasonable use" in the phrase "deprives the property of any reasonable use" may refer to the "feasibility" of the proposed use, or it may refer to the "rationality" of the use.

A zoning restriction deprives the zoned property of any reasonable use and is, therefore, confiscatory if all permitted uses are so devoid of feasibility that the restriction has accomplished the destruction of all usable value.

In judging the rationality of zoning, the interests of the individual property owner are balanced with the needs of the community. Disparity in value is a factor; a large disparity in value may be persuasive that existing zoning is irrational. Nevertheless, where the issue is the rationality of the zoning restriction, the courts have generally deferred to the judgment of the governmental authorities to whom the people's representatives have delegated the responsibility of balancing the interests of the individual owner and of the community.[10]

Where, however, the individual owner claims that none of the permitted uses are feasible, the question presented has been viewed as essentially judicial; we do not balance, we seek to determine the truth of the alleged fact that the permitted use is unfeasible.[11] In deciding that disputed factual ques-

[10] See *Yale Development Company* v. *City of Portage* (1968), 11 Mich App 83, 86, 87; *Muffeny* v. *City of Southfield* (1967), 6 Mich App 19, 23.

[11] See *Fenner* v. *City of Muskegon* (1951), 331 732; *Ervin Acceptance Company* v. *City of Ann Arbor, supra; Bassey* v. *City of Huntington Woods* (1956), 344 Mich 701.

tion, evidence that the land would be worth more if it were zoned differently or not zoned at all is not pertinent because, even if true, it does not negate the feasibility of the use or uses permitted by the challenged zoning restriction.

There are, of course, cases where the zoning is both unfeasible and irrational.[12]

We have reviewed the trial judge's findings of fact to determine whether they are clearly erroneous (GCR 1963, 517.1) and have concluded that he did not clearly err in finding that the plaintiff's lot can be reasonably (feasibly) used as it is now zoned. The witness who testified that the lot was worth $4,500 as now zoned said it would cost approximately $20,000 to construct a residence on the lot comparable to existing residences. And that if the lot is so improved, the property would be worth $24,500 to $25,000 after discounting for the unfavorable locational factors. It is perfectly understandable that the judge concluded that a lot, upon which a residence can be constructed and which for such use is worth $4,500, is a lot that can feasibly be used as it is zoned and, therefore, that the present zoning is not confiscatory or unconstitutional.

Affirmed. Costs to defendant.

---

[12] See *Janesick* v. *City of Detroit, supra; Smith* v. *Village of Wood Creek Farms* (1963), 371 Mich 127; *McGiverin* v. *City of Huntington Woods, supra; Grand Trunk W. R. Co.* v. *City of Detroit, supra.*