DRUMMER DEVELOPMENT CORPORATION V TOWNSHIP OF AVON

OPINION OF THE COURT

1. ZONING—ORDINANCES—RESIDENTIAL USE—PROPERTY VALUES—COMMERCIAL USE—CONFISCATORY ORDINANCES.

Zoning is not confiscatory or unconstitutional where the land can feasibly be used as it is zoned; therefore, where land zoned for residential use is of substantial value where put to that use, but might have more value if rezoned for commercial use, the fact that the owners failed to purchase property properly zoned for the use intended, and were thereafter unsuccessful in their efforts toward rezoning, is not, standing alone, a sufficient basis upon which to declare a zoning ordinance unconstitutional.

CONCURRENCE BY BRONSON, J.

2. ZONING—POLICE POWER—PUBLIC INTEREST.

*A uniform method of analysis is to be used when determining whether local zoning serves to promote or inhibit the public health, safety, morals or general welfare and this analysis must include an evaluation of the general public (metropolitan, regional and state) and local public interests which are then balanced in light of the many competing factors involved.*

3. ZONING—RESTRICTIONS—LAND USE—LOCAL INTENT—PUBLIC INTEREST—EVIDENCE—PROPERTY VALUES—DIMINUTION.

*A zoning ordinance which is not otherwise unreasonable or confiscatory and meets other constitutional requirements, and involves a local controversy and no wider general public interest is not unreasonable or confiscatory as to the land in question where the evidence does not support any claim of unreasonableness or confiscation and where there was no unreasonable diminution in the value of the land.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 14 *et seq.*
[2] 58 Am Jur, Zoning §§ 18, 26, 27.
[3] 58 Am Jur, Zoning §§ 14 *et seq.,* 28, 140.

Appeal from Oakland, Farrell E. Roberts, J. Submitted Division 2 October 3, 1973, at Lansing. (Docket No. 15444.) Decided December 28, 1973.

Complaint by Drummer Development Corporation, Robert M. Martin, Marie L. Martin, Gerald S. Crane, and Judy Crane against Avon Township for a determination that a zoning ordinance is unconstitutional as to their property. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Brennan & Bibeau,* for plaintiffs.

*Patterson & Patterson, Whitfield, Manikoff & White* (by *Lawrence R. Ternan) (Lewis R. Bebout,* of counsel), for defendant.

Before: McGREGOR, P. J., and BRONSON and CARLAND,* JJ.

CARLAND, J. This is a zoning case. The plaintiffs brought this action seeking a determination that the zoning ordinance of the Township of Avon is unconstitutional as applied to their property. The property is presently zoned single-family residential and plaintiffs seek to have it zoned commercial. The trial court denied relief and we affirm.

Plaintiffs own lots 52 and 53 of Hitchman's Haven Estates subdivision in Avon township. Lot 52 is unimproved and lot 53 is occupied by a single-family residence renting for $180 per month. Both lots are on the north side of Walton Boulevard, a busy thoroughfare. Lot 52 borders on its west Texas Avenue which is an ingress street to the subdivision.

Although in recent years an area directly across

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Walton has been rezoned and a bank constructed thereon, there are no other deviations from residential use on either side of Walton in either direction for one-half mile except a doctor's office, which is a little less than a quarter of a mile to the west of the property here involved. Old Perch Road, running north and south, lies to the east of the bank and a traffic light has been installed at its intersection with Walton.

At the time of trial plaintiffs' property was valued at between $29,000 and $39,000, but plaintiffs claim that the value of the two lots, if both were vacant and restricted to single residential use, is $10,000, and that if rezoning is granted these same lots vacant would have a value of $100,000. Plaintiffs purchased the property for $60,000 in the hope and anticipation that rezoning would be permitted and the construction of an office building would then follow. It is therefore urged that because of this the zoning is confiscatory and that it is unreasonable and that the property is not being put to its best use. Here, where the property is being used for residential purposes and is of substantial value when put to that use, such an argument has no relevance.

"It is not relevant where, as here, the issue is whether present zoning deprives the property of any reasonable use. * * * In deciding that disputed factual question, evidence that the land would be worth more if it were zoned differently or not zoned at all is not pertinent because, even if true, it does not negate the feasibility of the use or uses permitted by the challenged zoning restriction." *Reibel v City of Birmingham,* 23 Mich App 732, 738, 739–740; 179 NW2d 243, 246, 247 (1970).

Precisely the same argument was made in *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86

NW2d 166 (1957), to which the Court replied on pages 433–434; 86 NW2d, page 170:

"Disparity in values between residential and commercial uses will always exist. In the leading case of *Village of Euclid v Ambler Realty Co,* 272 US 365 (47 S Ct 114, 71 L Ed 303, 54 ALR 1016) [1926], Mr. Justice Sutherland, in upholding the ordinance, noted that the property involved was worth about $10,000 per acre for industrial use, as compared with $2,500 per acre for residential use. If such a showing serves to invalidate an ordinance the efforts of our people to determine their living conditions will be hopeless. To avoid 'confiscation' in this sense (the obtaining of the highest dollar for one particular lot) will result in confiscation of far greater scope in property values in the municipality as a whole due to its inability to control its growth and development."

The fact that the plaintiffs failed to purchase property properly zoned for the use intended and were thereafter unsuccessful in their efforts toward rezoning, is not, standing alone, a sufficient basis upon which to declare the ordinance unconstitutional. The plaintiffs took a chance and must now bear the consequences of their unsuccessful gamble.

Again as was stated in *Reibel, supra,* on page 740; 179 NW2d, page 247,

"It is perfectly understandable that the judge concluded that a lot upon which a residence can be constructed and which for such use is worth $4,500, is a lot that can feasibly be used as it is zoned and therefore, that the present zoning is not confiscatory or unconstitutional."

In the case at bar the trial judge reached the same conclusion based upon a finding that the property is presently being used as a single family

residence and has substantial value when so used. This being so, we affirm.

McGREGOR, P. J., concurred.

BRONSON, J. *(concurring)*. I concur in the result reached by my colleagues; however, I think that a different analysis is required.

In *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971), a long-standing principle[1] was reiterated as follows:

"[W]here it is shown that local zoning exists at odds with the general public welfare rather than in furtherance of it, there can be no presumed validity attaching to that portion of an ordinance which conflicts with public interest." *(Bristow, supra,* at 210; 192 NW2d at 324).

A careful study of *Bristow* reveals a uniform method of analysis to be used when determining "whether local zoning serves to promote or inhibit the public health, safety, morals, or general welfare".[2]

The inquiry proceeds first from a determination of *whose* interests are involved. This determination of what "public" is involved must include an evaluation of the interests of both the general "public" (metropolitan, regional and state) and the interests of the local "public".

If general interests, as opposed to purely local

---

[1] In *Village of Euclid v Ambler Realty Co,* 272 US 365, 390; 47 S Ct 114, 119; 71 L Ed 303, 311 (1926), the United States Supreme Court, after upholding the validity of a local zoning ordinance, cautioned:

"It is not meant by this, however, to exclude the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way."

[2] *Bristow v City of Woodhaven, supra,* at 219; 192 NW2d at 328–329.

interests, are involved it. is up to the courts to assure that all interests are properly considered. This was the very process at work in *Bristow*. In *Bristow* this process placed the burden of coming forward with evidence for the local enactment with the local municipality. The principal reason is that the general public is hardly ever represented in the process and cannot easily bring their interests into the decisional picture. Further, as I noted in *Binkowski v Shelby Twp,*[3]

" * * * *Bristow* provides a vehicle for encouraging municipalities to recognize their responsibilities to the development of not only their community but that of the surrounding community.

"The purpose of *Bristow* was to circumvent the problem of one community 'pushing off' undesirable uses to another community. * * * " *(Binkowski, supra,* at 469; 208 NW2d at 252.)

The rationale for the *Bristow* decision was also expressed in a quotation from the author of *Bristow,* who said:

" 'Practically speaking, the shifting of the burden of going forward is not only a rule of procedural convenience but is grounded in considerations of fairness to the parties as well. The governmental unit legislating zoning restrictions *should* have superior access to facts and justifications for the zoning exclusion. * * * ' (Emphasis supplied.)" *(Binkowski, supra,* at 470; 208 NW2d at 252.)

*Bristow* then teaches that "where certain uses are concerned, a balancing must be reached between the effect of local considerations, concerns, and desires against the greater public interest".[4] There are many factors involved, and, as observed,

---

[3] 46 Mich App 451, 469–470; 208 NW2d 243, 452–453 (1973).

[4] *Bristow, supra,* at 218.

"the combinations of factors are unlimited and each case must finally be decided on its peculiar factual setting".[5]

If a controversy develops which is purely local in character, and the interests of the general public have been considered, then the local decision can be awarded its proper weight, assuming it is not otherwise unreasonable or confiscatory and meets other constitutional requirements.

By this analysis the present controversy is a local one. There is no evidence of any wider general public interest being involved. The evidence does not support any claim of unreasonableness or confiscation. Neither did the trial court find any unreasonable diminution in value. This was a local decision and we cannot say that it was arbitrary as to the land in question. I would affirm.

---

[5] *Bristow, supra,* at 220.