TROY CAMPUS v CITY OF TROY

Docket No. 66247. Submitted October 14, 1983, at Lansing.—Decided
    March 5, 1984. Leave to appeal applied for.

   Plaintiff, Troy Campus, is a general co-partnership created for the
       purpose of developing low-rise medical and office buildings on a
       piece of property consisting of 17.6 acres located on Crooks
       Road, north of Big Beaver Road, in the City of Troy. The land
       is, and was at the time it was acquired, zoned R-1B by the
       defendant, City of Troy. The R-1B zoning classification restricts
       the use of the land to single-family detached dwellings,
       churches, schools, nonprofit swimming pools, noncommercial
       recreational areas, and golf courses. After exhausting its ad-
       ministrative remedies before the city's planning commission
       and city council, plaintiff brought an action in the Oakland
       Circuit Court seeking a declaratory judgment that the defen-
       dant's zoning ordinance, as applied to the land, was unconstitu-
       tional. Plaintiff contended that the R-1B classification of the
       land does not reasonably further a legitimate governmental
       interest and, alternatively, that the zoning classification
       amounts to a confiscation of the land because it precludes use
       of the land for any purposes to which the land is reasonably
       adapted. The trial court, David F. Breck, J., held that under
       the prevailing Michigan precedent plaintiff was required to
       present proofs as to each and every use permitted by the R-1B

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Zoning and Planning § 346.
   Purchaser of real property as precluded from attacking validity of
       zoning regulations existing at the time of the purchase and
       affecting the purchased property. 17 ALR3d 743.
[2, 5, 15] 82 Am Jur 2d, Zoning and Planning § 27.
[2, 6-8, 10, 12, 13] 82 Am Jur 2d, Zoning and Planning §§ 11, 33.
[2, 5, 15] 82 Am Jur 2d, Zoning and Planning § 36
[3] 82 Am Jur 2d, Zoning and Planning §§ 337, 352.
[4, 10] 82 Am Jur 2d, Zoning and Planning § 35.
[9] 82 Am Jur 2d, Zoning and Planning § 34.
[11] 70 Am Jur 2d, Special or Local Assessments §§ 33, 34.
   71 Am Jur 2d, State and Local Taxation § 154.
[12, 13] 82 Am Jur 2d, Zoning and Planning § 69.
[14] 82 Am Jur 2d, Zoning and Planning § 101 et seq.

classification. The court ruled that plaintiff had failed to sustain this burden of proof, and, therefore, the court need not address the question of whether or not the land could feasibly be developed for single-family residential use. The court also found that reasonable governmental interests were advanced by the R-1B classification. An order of no cause of action was therefore entered in favor of the defendant. Plaintiff appeals. *Held:*

1. Plaintiff is entitled to a judgment if it shows either that the R-1B classification does not reasonably advance a governmental interest or that the classification amounts to a confiscation of plaintiff's property. Plaintiff is not required to succeed on both arguments.

2. The test to be used in Michigan for determining whether a zoning ordinance is invalid because it is confiscatory is whether the restrictions the ordinance imposes on the use of the property preclude its use for any purposes to which it is reasonably adapted. Therefore, to establish confiscation, the plaintiff has the burden of showing that the R-1B classification precludes use of the land for any use to which it is reasonably adapted. This rule does not impose a burden on plaintiff to positively show that the land could not be reasonably adapted to each and every permitted use. Specifically, the Court of Appeals does not believe that plaintiff's failure to introduce evidence on the use of the property for churches, schools, nonprofit swimming pools, noncommercial recreational areas, or golf courses, precluded a finding of confiscation. The plaintiff introduced evidence indicating that the land has a negative value as a site for single-family homes.

3. Although case precedent could be interpreted as requiring plaintiff to have introduced specific proofs regarding the feasibility of the non-public uses of agriculture or a golf course permitted by the R-1B zoning classification, the Court of Appeals believed that, in the instant case, the application of such a rule would be illogical and would produce unjust results. The evidence introduced by plaintiff established a sufficient basis for the trier of fact to determine that the land could not reasonably be developed as a farm or as a golf course.

4. No governmental interest is reasonably advanced by the R-1B classification of the land. The trial court erred in determining otherwise.

5. It is unreasonable to impose such a disproportionate share of the cost of dealing with the public problems generated by Crooks Road traffic on the last developer to locate along this busy major road. The burden and cost of dealing with these

problems should be fairly distributed among the public, and should not depend upon the fortuity of who develops his land last.

6. The Crooks Road traffic problem is a factor which weighs against the reasonableness of single-family use of the land.

7. There is no reasonable governmental interest advanced by the master plan designation or the zoning ordinance classification of the land. The record discloses a lack of commitment to a development plan along this stretch of Crooks Road which would be reasonably advanced by restricting the land to single-family use.

8. The record indicates that the area does not have a single-family residential character and that defendant has no real stake in restricting the use of the land to single-family residential use. Any further encroachment on the sole single-family subdivision to the north of the land effected by office or commercial development of the land is minimal.

9. The Court of Appeals was not impressed with defendant's argument that the R-1B classification protects the vacant residential property on the east side of Crooks Road across from the land.

10. While the R-1B classification does little to further any legitimate governmental interest, the intrusion on plaintiff's rights is significant. By virtue of its size, shape, and location, the land is not well suited to single-family use. The record supports the conclusion that a single-family subdivision plat on the land would violate a number of planning principles.

11. The record establishes that even if the land is not totally valueless as zoned, there is a wide disparity in its value as zoned and its value for office use.

12. The defendant's interest in protecting the area from conditions created by its earlier actions and policies does not justify the imposition of severe use restrictions on the land.

13. The R-1B zoning classification of the land is invalid because it fails reasonably to advance a legitimate governmental interest and significantly infringes on plaintiff's private property rights.

14. The judgment of the circuit court is reversed and the case is remanded for proceedings consistent with *Ed Zaagman, Inc v Kentwood,* 406 Mich 137, 181-183 (1979).

Reversed and remanded.

DANHOF, C.J., dissented and would hold that the Supreme Court's decision in *Ed Zaagman, Inc v Kentwood,* 406 Mich 137 (1979), requires a finding that all permissible uses under the

zoning ordinance are inapplicable to the plaintiff's property before the ordinance may be found confiscatory. Under such an interpretation of *Zaagman,* plaintiff failed to sustain its burden of proof that the zoning ordinance is confiscatory. He would affirm.

## OPINION OF THE COURT

1. ZONING — CONSTITUTIONAL LAW — PURCHASER OF PROPERTY — ORDINANCES.

   One who purchases with knowledge of zoning restrictions may nonetheless be heard to challenge the restrictions' constitutionality; an otherwise unconstitutional ordinance does not lose this character and immunize itself from attack simply by the transfer of property from one owner to another.

2. ZONING — BURDEN OF PROOF — CONSTITUTIONAL LAW — ALTERNATE GROUNDS.

   A plaintiff who challenges a municipal zoning classification on the alternate constitutional grounds that the classification does not reasonably further a legitimate governmental interest or that the zoning classification amounts to a confiscation of plaintiff's property because it precludes use of the land for any purposes to which the land is reasonably adapted is entitled to a judgment if it shows either that the classification does not reasonably advance a governmental interest or that the classification amounts to a confiscation of plaintiff's property; the plaintiff is not required to succeed on both arguments.

3. ZONING — APPEAL — COURT OF APPEALS — *DE NOVO* REVIEW.

   The Court of Appeals, while giving deference to the findings of the trial court, must review the record in a zoning case *de novo.*

4. ZONING — DESTRUCTION OF VALUE — CONDEMNATION — JUST COMPENSATION — CONSTITUTIONAL LAW.

   A zoning ordinance which substantially destroys the value of a parcel of property is void, even though it may advance the public welfare, because it amounts to a condemnation of property for a public purpose without compensation.

5. ZONING — CONFISCATION OF PROPERTY — BURDEN OF PROOF — CONSTITUTIONAL LAW.

   The test applied in Michigan for determining whether a zoning ordinance is invalid because it is confiscatory is whether the restrictions the ordinance imposes on the use of the property preclude its use for any purposes to which it is reasonably

adapted; the plaintiff has the burden of proof in this regard, however, the plaintiff is not required to positively show that his land could not be reasonably adapted to each and every permitted use.

6. Zoning — Police Power.

A zoning ordinance, as an exercise of the police power, must bear a reasonable relationship to the public health, safety, or welfare.

7. Zoning — Constitutional Law.

A zoning ordinance is invalid if it fails to advance a legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest.

8. Constitutional Law — Police Power — Zoning.

The test of the validity of a police power regulation requires a balancing of the public interest against the private interest; the extent of public need must be balanced against the degree of intrusion upon the private interest, thus, where the public need addressed by a zoning restriction is relatively small, a large intrusion on a landowner's use of his land will not be deemed reasonable.

9. Constitutional Law — Zoning — Hardship.

The rights of the general public must be weighed against the right of the individual landowner to use his property to the greatest advantage in every case of hardship resulting from a zoning ordinance; significant, but not conclusive, factors in such a determination are depreciation and loss of use by the property owners as a result of the application of the ordinance.

10. Constitutional Law — Zoning — Destruction of Value — Police Power.

A zoning regulation which substantially reduces the value of land may not necessarily be confiscatory, however, the disparity in value between the land as zoned and the land if other uses were permitted is a factor to be considered in determining whether a zoning regulation is a reasonable exercise of the police power.

11. Municipal Corporations — Highways — Traffic Problems — Cost.

The burden and cost of dealing with public problems concerning traffic on a major road created by a city in establishing an area as a center of office and commercial activity should be fairly distributed among the public and should not depend upon the

fortuity of who develops his land last; it is unreasonable to impose a disproportionate share of the cost of dealing with such problems on the last developer to locate along a busy major road.

12. ZONING — MASTER PLAN — POLICE POWER — BALANCING OF INTERESTS.

The question of whether a zoning classification advances a city's master plan is only one of the factors to be considered in determining whether the ordinance bears a reasonable relationship to the public health, safety, or welfare, it does not replace the balancing of interests required under an assertion of the police power; some of the other factors to be considered are: the extent to which the goals of the master plan are advanced by the use limitations imposed on a given parcel of land, the stability of the master plan, and the extent to which the master plan constitutes a commitment to a coherent development plan for the neighborhood which takes into account existing conditions and legitimate future expectations.

13. MUNICIPAL CORPORATIONS — MASTER PLAN — ZONING REGULATIONS.

The validity of a zoning regulation must be tested by existing conditions, while a city's master plan constitutes a general guide for future development.

14. ZONING — USES OF LAND.

The statute regarding the regulation of uses of land and structures by a city or a village requires that a zoning ordinance insure that uses of land shall be situated in appropriate locations and relationships (MCL 125.581; MSA 5.2931).

DISSENT BY DANHOF, C.J.

15. ZONING — CONFISCATION OF PROPERTY — BURDEN OF PROOF.

*There must be a finding that all permissible uses under a zoning ordinance are inapplicable to the aggrieved property owner's property before the ordinance may be found to be confiscatory in regard to such property.*

*Keywell & Rosenfeld* (by *Frederic I. Keywell* and *Dawn L. Phillips),* for plaintiff.

*John J. Martin, III,* Assistant City Attorney, for defendant.

Before: DANHOF, C.J., and BRONSON and W. R. PETERSON,* JJ.

BRONSON, J. Plaintiff appeals as of right from the circuit court's order upholding the validity of defendant's single-family zoning classification of property owned by plaintiff. We find that plaintiff met its burden of proving that the zoning classification of plaintiff's property does not reasonably advance any governmental interest and is therefore invalid. We accordingly reverse the judgment of the trial court.

Plaintiff is a general co-partnership created for the purpose of developing low-rise medical and professional office buildings on the subject property. The subject property is a 17.6-acre L-shaped parcel of land (the land) located on Crooks Road, north of Big Beaver Road, in the City of Troy. The land is comprised of a long, narrow 15-acre rectangle, with frontage of approximately 500 feet on the east side of Crooks Road and a depth of approximately 1,317 feet, at the southwest end of which is appended an approximately 2.5-acre rectangle.

The Crooks-Big Beaver intersection is a major intersection in the City of Troy. Big Beaver Road is a principal east-west road in Troy. At the Crooks intersection it has four through lanes and two deceleration lanes for right turns. It also has a center median with two left-turn lanes.

In the vicinity of the intersection are a number of office buildings, including several high-rise buildings. Along both sides of Big Beaver Road in the one-mile stretch west from the Crooks intersection is a combination of office and commercial uses. Located in the vicinity of the Big Beaver-Coolidge intersection is the Somerset complex,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

consisting of a high-rise hotel and a regional shopping center, K mart Corporation's international headquarters, and two major office developments.

For approximately one-quarter mile east along Big Beaver Road from the Crooks intersection is an area of intense office development, including two high-rise and several mid-rise office developments. Approximately one-quarter mile from the intersection are the entrance and exit ramps to I-75. Just east of I-75 on the north side of Big Beaver Road is the municipal office complex of the City of Troy.

Crooks Road, at the Big Beaver Road intersection, has four through lanes plus a right-turn deceleration lane. It is one of Troy's major north-south roads and is the third most heavily traveled road in the city. At present, Crooks Road in front of the land has three lanes. Troy's master plan calls for a widening of Crooks Road north from the land to the next mile road. At the northwest and southwest corners of the Crooks-Big Beaver intersection are two service stations. A 13-story high-rise office building sits at the northeast corner and another office building is located at the southeast corner.

In the approximately 800-foot stretch of Crooks Road between the land and the Big Beaver intersection are a mix of nonresidential uses, both office and commercial. There is no residentially zoned land in that stretch of road. Directly to the south of the land on the west side of Crooks Road are a 24-hour Denny's Restaurant, a small strip shopping center, several office developments, and a vacant parcel zoned for office use.[1] Abutting the

---

[1] Since the trial, this vacant parcel has been developed with an office building.

north and west boundary of the land is a small single-family subdivision, consisting of older, low-cost homes.

Directly across Crooks Road from the land is a vacant parcel, part of which is zoned for single-family use and part of which has recently been rezoned by the city for mid-rise office use. An office development plan has been approved for this parcel and the record indicates that improvements will be made to Crooks Road to accommodate the expected increased traffic generated by development of this parcel and the newly developed office building on the west side of Crooks Road (see fn 1 *supra*).

The land is, and was at the time it was acquired,[2] zoned R-1B. The R-1B zoning classification restricts the use of the land to single-family detached dwellings, churches, schools, nonprofit swimming pools, noncommercial recreational areas, and golf courses.

Plaintiff challenges the R-1B zoning classification on alternative constitutional grounds. Plaintiff contends that the classification does not reasonably further a legitimate governmental interest. Alternatively, plaintiff argues, the zoning classification amounts to a confiscation of plaintiff's property because it precludes use of the land for any purposes to which the land is reasonably adapted. Plaintiff is entitled to a judgment if it shows *either* that the R-1B classification does not reasonably advance a governmental interest *or* that the classification amounts to a confiscation of plaintiff's

[2] "[O]ne who purchases with knowledge of zoning restrictions may nonetheless be heard to challenge the restrictions' constitutionality. An otherwise unconstitutional ordinance * * * does not lose this character and immunize itself from attack simply by the transfer of property from one owner to another." *Kropf v Sterling Heights,* 391 Mich 139, 152; 215 NW2d 179 (1974).

property; plaintiff is *not* required to succeed on both arguments. *Kropf, supra,* pp 156-157.

In addressing plaintiff's confiscation claim, the trial court interpreted Michigan case law to require presentation of proofs as to all of the potential uses permitted by the R-1B classification. The court ruled that plaintiff had failed to sustain this burden of proof. The court opined that the Michigan rule was inequitable and expressed its preference for the rule set forth in *Grimpel Associates v Cohalan,* 41 NY2d 431; 393 NYS2d 373; 361 NE2d 1022 (1977), to the effect that plaintiff need not prove the unfeasibility of the land's use for public or quasi-public purposes. Inviting appellate review, the trial court stated that it was not for it to follow the "sound public policy and cogent legal reasoning" embodied in *Grimpel.*

The trial court continued that since plaintiff had failed to make the required showing the court need not address the question of whether or not the land could feasibly be developed for single-family residential use. In its amended findings of fact, the trial court found that reasonable governmental interests were advanced by the R-1B classification.

This Court, while giving deference to the findings of the trial court, must review the record in a zoning case *de novo. Kropf, supra,* p 163. Although we hold that the R-1B classification of plaintiff's property is invalid because it fails to reasonably advance a legitimate governmental interest, we feel it necessary also to discuss the fundamental issues raised by the trial court's view of the burden imposed on a landowner making a confiscation claim.

A zoning ordinance which substantially destroys the value of a parcel of property is void. *Robyns v*

*Dearborn,* 341 Mich 495; 67 NW2d 718 (1954). Even though such an ordinance may advance the public welfare, it is invalid because it amounts to a condemnation of property for a public purpose without compensation. In Michigan, the test for determining whether a zoning ordinance is invalid because it is confiscatory is whether the restrictions the ordinance imposes on the use of the property "preclude its use for any purposes to which it is reasonably adapted". *Kropf, supra,* pp 162-163.

Plaintiff introduced evidence indicating that the land has a negative value as a site for single-family homes.[3] We agree that, to establish confiscation, the plaintiff has the burden of showing that the R-1B classification precludes use of the land for any use to which it is reasonably adapted. *Kropf, supra,* pp 162-163. We do not agree that this rule imposes a burden on plaintiff to positively show that the land could not be reasonably adapted to each and every permitted use; specifically, we do not believe that plaintiff's failure to introduce evidence on the use of the property for churches, schools, nonprofit swimming pools, noncommercial recreational areas, or golf courses precluded a finding of confiscation.

In *Zaagman, supra,* fn 3, the Supreme Court found that a zoning ordinance precluded all reasonable uses of the property in question, but did

---

[3] As stated *supra,* the trial court did not rule on whether or not the land could feasibly be developed for single-family residential use. Since we reverse this case on other grounds, we refrain from an appellate determination of this issue. We note, however, that the cost and revenue estimates of *defendant's* witness, Robert Scott, after calculating in financing costs, indicate that the cost of developing the parcel for single-family residences would, at best, "be roughly equivalent to any potential sales returns on the developed property" and, therefore, not reasonably adapted to the single-family home permitted use. *Ed Zaagman, Inc v Kentwood,* 406 Mich 137, 159; 277 NW2d 475 (1979).

not expressly consider each of the permitted uses. Similarly, in *Schwartz v City of Flint,* 92 Mich App 495; 285 NW2d 344 (1979), *lv den* 408 Mich 905 (1980), *after remand* 120 Mich App 449; 329 NW2d 26 (1982), this Court invalidated a zoning ordinance based on proofs showing that the property was undevelopable for single-family homes, without undertaking a consideration of the feasibility of any other uses permitted by the zoning ordinance.

In ruling that plaintiff had not met the required burden of proof, the trial court relied on *White Lake Twp v Amos,* 371 Mich 693; 124 NW2d 803 (1963), where the Court refused to find a zoning ordinance invalid because the landowners showed only that the land was undevelopable for single-family housing, but did not show that the land was undevelopable pursuant to the other non-public uses permitted by the applicable ordinance. Accord, *Davis v Bridgeport Twp Planning Comm,* 55 Mich App 15; 222 NW2d 13 (1974).

In *White Lake Twp, supra,* and *Davis, supra,* the other uses permitted by the applicable ordinances were animal husbandry and farming, respectively, both of which are *commercial* activities. These cases do not stand for the proposition that a landowner, in order to prove confiscation, must show that his property is not developable for the public, religious, or nonprofit uses permitted by a zoning ordinance; moreover, we do not believe that to extend the cited cases to require such a showing makes sense. This subject is addressed in 1 Rathkopf, The Law of Zoning and Planning (4th ed), § 6.09, pp 6-31—6-33:

"Since the test of confiscation is often expressed as that the restrictions prevent the subject property from being used for any use to which it is adapted, some

courts have required the plaintiff to demonstrate that the property is not adapted to any use, either absolutely or conditionally permitted, including churches, a public library, or a museum.

"It is obvious that the market for land for churches and schools is extremely limited and that for museums and libraries is more limited still. Such uses are established only *after* a residential area has been established; they are located where residential development has been sufficiently extensive to indicate not only a demand for the services that the particular facility may supply, but one great enough to assure funding for its establishment and support. Even the existence of a religious corporation or school body contemplating the purchase of land is extremely difficult to ascertain and proof that prior to instituting action the landowner has made 'bona fide efforts' to sell the land for such purposes is almost a practical impossibility.

"Public uses, such as public schools and municipal buildings, limit the possible purchasers to the municipality which has imposed the restriction or to other public corporations which also have the right of eminent domain. These, too, seldom purchase property for municipal or governmental purposes until the community has developed so as to require the use.

"Some courts have recognized that it is unrealistic to expect land to have a viable market for these public and quasi-public uses where circumstances exist which render the land unadaptable for the principal permitted residential use. It would seem that where the plaintiff has demonstrated that the land is not reasonably adaptable for the residential uses to which it is restricted, it should be sufficient merely to show, in addition, that neither inquiries nor offers had been received for any of the other permitted or conditional uses, thus placing the burden on the municipality of going forward with proof that there are reasonable grounds to believe that a market exists." (Footnotes omitted; emphasis in original.)

The R-1B zoning classification does permit two other types of non-public uses, *i.e.,* agriculture or a

golf course. Although *Kropf, supra, White Lake Twp, supra,* and *Davis, supra,* could be interpreted as requiring plaintiff to have introduced specific proofs regarding the feasibility of these other non-public uses, we believe that, in the instant case, application of such a rule is illogical and produces unjust results. The evidence introduced by plaintiff established a sufficient basis for determining the infeasibility of developing the land for agriculture or as a golf course. The trier of fact, in a zoning case, could determine that a parcel consisting of only 17.6 acres on a heavily traveled urban road, in the midst of an intensely developed and highly urbanized area, could not reasonably be developed as a farm or as a golf course.

A zoning ordinance, as an exercise of the police power, must bear a reasonable relationship to the public health, safety, or welfare. *Janesick v Detroit,* 337 Mich 549, 556; 60 NW2d 452 (1953). A zoning ordinance is invalid if it fails to advance a legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest. *Kropf, supra,* p 158.

The test of the validity of a police power regulation requires a balancing of the public interest against the private interest.

"In every case of hardship the rights of the general public must be weighed against the right of the individual land owner to use his property to the greatest advantage. Significant but not conclusive factors in such a determination are depreciation and loss of use by the property owners as a result of the application of the ordinance." *Janesick, supra,* p 554.

The extent of public need must be balanced against the degree of intrusion upon the private interest. *Pere Marquette R Co v Muskegon Twp*

*Board,* 298 Mich 31, 36; 298 NW 393 (1941) (hard-ship to owner must be weighed against usefulness to public). Thus where the public need addressed *(i.e.,* the public interest advanced) by the zoning restriction is relatively small, a large intrusion on a landowner's use of his land will not be deemed reasonable. *Id.* Furthermore, while a zoning regu-lation which substantially reduces the value of land may not be confiscatory, the disparity in value between the land as zoned and the land if other uses were permitted is a factor to be consid-ered in determining whether a zoning regulation is a reasonable exercise of the police power. *Reibel v Birmingham,* 23 Mich App 732; 179 NW2d 243 (1970).

In its amended findings of fact, the trial court found that the R-1B zoning classification advanced legitimate governmental interests, specifically:

"(1) Reducing traffic congestion;
"(2) Preserving residential zoning on the east side of Crooks Road across the street from the subject parcel; and
"(3) Following the Master Land Use Plan."

After a thorough review of the record, we conclude that no governmental interest is reasonably ad-vanced by the R-1B classification of the land.

Defendant first claims that the R-1B classifica-tion relieves traffic congestion. The record indi-cates that Crooks Road is a heavily traveled road, receiving substantial traffic from the intense office and commercial uses in the vicinity of the land. The City of Troy has plans to alleviate this traffic by improving Crooks Road in the one-mile stretch north from Big Beaver Road. In addition, two office developments—one just completed and one just

approved by the city—will further increase the Crooks Road traffic.

Having concluded that these two new office developments are acceptable, with associated traffic improvements, it is difficult to understand how the city can justify prohibiting office development of the land or why the city cannot deal with the incremental impact of traffic to be generated from the land by utilizing means (i.e., traffic improvements) less intrusive than the prohibition of office development.

Moreover, an element of extreme unfairness is inherent in the defendant's position. The traffic problems on Crooks Road were not created by the land. They are an existing condition created by existing uses, including two uses just approved by defendant. Crooks Road is a major thoroughfare intended to carry large volumes of commercial traffic. The problems created by the nature of the road and of the uses served by the road are problems created by the city in establishing this area as a center of office and commercial activity—they are public problems. The burden and cost of dealing with these problems should be fairly distributed among the public, and should not depend upon the fortuity of who develops his land last. That is, it is unreasonable to impose such a disproportionate share of the cost of dealing with problems generated by Crooks Road traffic on the last developer to locate along this busy major road. See Alderton v Saginaw, 367 Mich 28; 116 NW2d 53 (1962).

Finally, the Crooks Road traffic problem also militates strongly against the use of the land for single-family residences. The small subdivision which could be platted on this 17.6-acre parcel would have access only from Crooks Road, via one

long (approximately 1,500 feet) cul-de-sac. As the city's Planning Director testified, school children from such a subdivision would be required to walk along Crooks Road (which has no sidewalks) to get to school. We conclude that Crooks Road traffic is a factor which weighs *against* the reasonableness of single-family use of the land.

Defendant next claims that the R-1B classification advances the city's master plan. Whether a zoning classification advances a city's master plan is a factor in determining reasonableness. It is, however, only one factor; it does not replace the balancing of interests required under an assertion of the police power. Some of the other factors to be considered are: the extent to which the goals of the master plan are advanced by the use limitations imposed on a given parcel of land; the stabil-ity of the master plan; the extent to which the master plan constitutes a commitment to a coherent development plan for the neighborhood which takes into account existing conditions and legitimate future expectations. While a master plan constitutes a general guide for future development, the validity of a zoning regulation must be tested by existing conditions. *Biske v Troy,* 381 Mich 611, 617-618; 166 NW2d 453 (1969).

Defendant only recently designated the land for single-family use in its master plan. The land was earlier designated for more intense residential use, and its master plan designation was only lowered in 1980, the same year this suit was commenced.

Given the facts discussed in this opinion and the other evidence in the record, including, particularly, the pattern of development along Crooks Road, recent rezonings of property along this stretch of Crooks Road to permit office development, the inability to integrate the land into a

stable residential neighborhood, and the designa-
tion of Crooks Road as a major thoroughfare by
the same master plan, we can find no reasonable
governmental interest advanced by the master
plan designation or the zoning ordinance classifica-
tion of the land. Our review of the record discloses
a lack of commitment to a development plan along
this stretch of Crooks Road which would be reason-
ably advanced by restricting the land to single-
family use.

Defendant next argues that the R-1B classifica-
tion prevents further encroachment of commercial
uses on the residential area. The zoning enabling
act requires that a zoning ordinance insure that
uses of land "shall be situated in appropriate
locations and relationships". MCL 125.581; MSA
5.2931. Defendant contends in effect that office
development of the land would be inconsistent
with the single-family residential character of its
area.

The record clearly indicates that the area does
not have a single-family residential character and
that defendant has no real stake in restricting the
use of the land to single-family residential.[4] There
is office and commercial development and zoning
on both sides of Crooks Road south to Big Beaver
Road. In view of the intense commercial and office
development of the area, any further encroach-
ment on the sole single-family subdivision to the
north of the land effected by office or commercial
development of the land is minimal.

Finally, defendant argues that the R-1B classifi-

[4] We note that the newly developed office building just to the south
of the land on what is called the "Poppleton School site" was for-
merly the site of a public school. The school building was recently
removed and the site sold to developers for office development. This
hardly indicates a viable residential hinterland in the northwest
quadrant of the Crooks Road-Big Beaver intersection or that the
neighborhood has a single-family residential character.

cation protects the vacant residential property on the east side of Crooks Road across from the land.

The land is separated from the land which defendant seeks to protect by Crooks Road, a major road, and by its traffic. Crooks Road now has three lanes in front of both parcels, it is planned for widening in the near future, and already widens to four lanes immediately south of the land. Roads are generally considered by planners to have some buffering effect. On the other hand, abutting the land the defendant wishes to protect, and also across Crooks Road from the land, is a portion of the same parcel the defendant wishes to protect, which defendant has just rezoned for office use.

We are not impressed by defendant's suggestion that it is acceptable to rezone for office use the land directly abutting the parcel it wishes to protect, while at the same time maintaining that its interest in protecting that land justifies single-family zoning of a parcel across a major, heavily traveled road. See *Alderton, supra.*

While the R-1B classification does little to further any legitimate governmental interest, the intrusion on plaintiff's rights is significant. By virtue of its size, shape, and location, the land is not well suited to single-family use. A single-family subdivision plat of the land would create an extremely unwieldy layout and would require departure from several important planning principles.

For example, defendant's subdivision control ordinance provides that cul-de-sacs should not exceed 500 feet in length. There are strong planning and policy reasons for this limitation, which is similar to limitations imposed by other municipalities. Without obtaining a waiver of this limitation, a subdivision on the land would be undevelopable.

Moreover, the defendant's transportation engineer testified that single access subdivisions are not in accord with sound planning and are contrary to defendant's policy. The testimony supports the conclusion that a single-family subdivision plat on the land would violate a number of planning principles.

The record also establishes that even if the land is not totally valueless as zoned, there is a wide disparity between its value as zoned and its value for office use. This disparity is a factor in determining the reasonableness of the ordinance. *Reibel, supra.*

In *Alderton, supra,* the Supreme Court rejected the City of Saginaw's contention that the city's interest in protecting the area from conditions created by its earlier actions and policies justified the imposition of severe use restrictions on the last undeveloped parcel. Nothing in the instant record persuades us to reach a different conclusion. We hold that the R-1B zoning classification of the land is invalid because it fails reasonably to advance a legitimate governmental interest and significantly infringes on plaintiff's private property rights.

We reverse the judgment below and remand to the trial court for proceedings consistent with *Zaagman, Inc, supra,* pp 181-183.

W. R. PETERSON, J., concurred.

DANHOF, C.J. *(dissenting).* I am compelled to dissent from the majority's decision because I believe the Supreme Court's decision in *Ed Zaagman, Inc v Kentwood,* 406 Mich 137; 277 NW2d 475 (1979), requires a finding that all permissible uses under the zoning ordinance are inapplicable to the plaintiff's property before the ordinance may be found confiscatory. In *Zaagman, supra,* p 159, the

Supreme Court analyzed an allegedly confiscatory zoning ordinance and stated that:

"Applying those rules enumerated in Part I discussing *Kirk [v Tyrone Twp*, 398 Mich 429; 247 NW2d 848 (1976)] it is clear that this matter is particularly governed by rule 3 of *Kropf [v Sterling Heights*, 391 Mich 139; 215 NW2d 179 (1974)], *i.e.,* 'to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted'. It is, of course, plaintiffs' duty 'to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property' *(Kropf,* rule 2), as the 'ordinance comes to us clothed with every presumption of validity' *(Kropf,* rule 1)."

The Court concluded that a review of the record supported the finding that "all reasonable uses are precluded under the R-1-C zoning designation". *Zaagman, supra,* p 159. Although the Court in *Zaagman* did not specifically address each use permitted under the R-1-C zoning classification, I interpret the above-quoted language to indicate that the other permissible uses were found to be inapplicable to plaintiff's property as well. Under my interpretation of *Zaagman,* plaintiff failed to sustain its burden of proof that the zoning ordinance is confiscatory. I would affirm the trial court.